[Civ. No. 6045. First Appellate District, Division One.—January 16, 1928.]

U. H. PEAK et al., Respondents, v. KEY SYSTEM TRANSIT COMPANY (a Corporation), Appellant.

Donahue, Hynes & Hamlin, Brobeck, Phleger & Harrison, Chapman, Trefethen & Chapman and Frank S. Richards for Appellant.

Ford, Johnson & Bourquin for Respondent Peak.

Frank J. Creede, T. W. Slaven and W. J. O'Connor for Respondent State Compensation Insurance Fund.

PARKER, J., *pro tem.*—Appeal by defendant from a judgment rendered in favor of plaintiffs pursuant to the

verdict of a jury in an action brought to recover damages on account of personal injuries sustained through the alleged negligence of defendant, its agents and servants.

Plaintiff Peak was injured on September 5, 1924. At the time of his injury he was employed by one Fred W. Diehl, and the nature of his employment was as driver of a truck. The said Diehl at all times embraced within our inquiry carried compensation and accident insurance with the State Compensation Fund.

In November of 1924 Peak commenced this action against defendant Key System Transit Company, alleging that his injury was sustained through the negligence of said company. Thereafter on November 17, 1924, Peak duly notified the said State Compensation Fund that such an action had been instituted by him, and such notice stated that it was given in pursuance of the terms and provisions of the Workmen's Compensation, Insurance and Safety Act of the state of California. Thereafter on January 29, 1925, the State Compensation Insurance Fund filed an action against Key System Transit Company. Both actions were predicated upon the same facts, but the action of State Compensation Insurance Fund contained additional facts showing the contract of insurance issued to Peak's employer by the Insurance Fund and that the same covered the injury sustained by Peak, and that he did receive certain benefits. In both cases the defendant was represented by the same counsel. In case of *Peak* v. *Key System* issue was joined and the case placed upon the trial calendar, while in the case of the *Compensation Fund* v. *Key System* the issue remained open pursuant to stipulations entered into between respective counsel.

The Peak case coming on regularly for trial a jury was impaneled, and after the taking of testimony had commenced and a day of trial consumed the State Compensation Fund appeared herein and asked permission of court to intervene as a party plaintiff. After much discussion and colloquy between the court and counsel the request was granted. Appellant vigorously assails the action of the court in this as being prejudicially erroneous.

Upon the intervention all of the allegations of the complaint of Compensation Fund were deemed denied. The main

objection now urged concedes the right of the trial court to permit intervention or order consolidation for purposes of trial, but stresses the claim that after trial commenced the application came too late; indeed, in the court below, when the matter was first discussed, counsel for appellant then stated, "My only objection is that it comes too late."

Before discussing the point further it may be stated that no question of fraud or inexcusable delay appears. The case of the Compensation Fund had lain dormant by request of defendant, and counsel for defendant were at all times aware of the pendency thereof and of the issues tendered thereby.

Without going exhaustively into the questions of intervention or consolidation for purposes of trial, and without reviewing the law establishing the rights of an employer for damage caused him by or through injury to servant, it is sufficient for the case to note that all parties concede the cause of action in plaintiff Compensation Fund against defendant, and concede further that if the case had been at issue and ready for trial the action of the court would have been correct in ordering a consolidation of the cases prior to the actual commencement of the trial of the Peak case. The only purpose of the intervention of the State Compensation Insurance Fund was to secure for it a return of its outlay in case it was determined that the negligence of defendant caused the injury to plaintiff, and that through the injury damages were suffered. At all times the issue of defendant's negligence was the same and was the one issue determining defendant's liability either to Peak or the Compensation Fund. The contention of the appellant here admits all of this. Concretely appellant's argument is thus put: "When the statute says that the right to consolidate is confined to a consolidation before trial, then the employer or his insurance carrier must apply for a consolidation prior to trial, and there can be no order permitting consolidation after trial commenced," citing section 26, Workmen's Compensation, Insurance and Safety Laws. [Stats. 1919, p. 920, sec. 8.] The controlling facts remain that the error complained of consists in the court's permitting to be done what concededly the law allows and requires to be done, but permitting it at a stage in the proceedings beyond that expressly set forth in the statute.

It surely would serve no useful purpose for us to minutely analyze all of the possible constructions which might be suggested. After a most searching inquiry we would be brought back to the main endeavor—to weigh the entire case to find if any substantial prejudice resulted to the rights of appellant. We must concede that errors might arise so far affecting the rights of the litigant that a reviewing court perforce must conclude that a miscarriage of justice resulted without further inquiry. But where the injury complained of goes only to a question of procedure and practice it is rarely that the prejudice is presumed. Such is the case here. Appellant centers its claim of deprivation of rights upon the theory that the intervention or consolidation being permitted after the impanelment of the jury, the defendant was deprived of the opportunity of examining the individual jurors on *voir dire* as to any possible connection with the intervening party, or as to the feelings of the persons examined for or against the counsel for the said intervener. This objection seems to be merely perfunctory. Counsel in the court below were quite frank in discussing the situation with the trial judge, and it is apparent that both court and counsel were striving to meet a somewhat unusual situation. Naturally counsel desired to preserve his record and retain for consideration the point involved. Yet after such consideration and after trial the claim of error finds only this one theory upon which to rest. We have not before us the record showing the scope of the *voir dire* of the jurors. However, the record does disclose that defendant long before the examination of the jurors knew the interest of the Compensation Fund in the result of the action. Further the record here discloses that no request was made to further examine any juror, and there is not even a suggestion that if a complete re-examination had been undertaken it would have disclosed any ground for complaint. From our record here we must presume that a fair and impartial jury was impaneled, and it would surely be speculative in a high degree to arbitrarily conclude that by reason of the intervention of a formal party the complexion of the jury would be changed.

We are mindful, too, that we are not considering a case where a private corporation insurance carrier is involved.

The State Compensation Insurance Fund is an agency of the state, and was established for the purpose of administering certain portions of the sovereignty of the state (*Rauschan* v. *Gilbert* [*State Compensation Ins. Fund*], 80 Cal. App. 754 [253 Pac. 175]). Therefore there are no stockholders or private interests involved for or against which a juror might entertain a friendly, protective attitude or a prejudice.

Going further and into the trial of the case, the State Compensation Fund took no active part in the trial. It simply offered more or less formal proof on the facts of its claim, which was wholly conditioned upon the jury's determination on the facts presented by the other parties to the action.

We conclude that at most the action of the court could be held a mere irregularity of procedure without substantial injury to the rights of the defendant, and as such not ground for disturbing the judgment (Const., art. VI, sec. 4½).

This brings us to a consideration of the merits of the appeal. For the purpose it becomes necessary to detail sufficient of the facts to illustrate the contentions made.

Plaintiff Peak at the time of the accident was employed as a truck driver. He had driven his truck from Oakland to Alameda and had parked on Park Street. No question is presented as to the propriety of his parking nor is any point involved concerning local ordinances. The position of the truck when parked was in such relation to the tracks of the car system maintained and operated by the defendant corporation as to render doubtful the free passage of street-cars. The plaintiff Peak, anticipating that the street-car of defendant might strike the truck, walked toward the advancing street-car and raised his hand in warning and the car stopped. Up to this point there seems little, if any, disagreement as to the facts. After the street-car had come to a full stop the plaintiff and the motorman and conductor of the car viewed the situation, and all saw the difficulties liable to be encountered in attempting to pass. Plaintiff explained to those in charge of the car that if it should prove impossible for the car to pass he, plaintiff, would move the truck out and drive to a place where the

truck would be entirely out of the way. After observation it was determined by all that an effort would be made to pass without moving the truck. Accordingly, plaintiff took a position at or near the end of the truck and signaled the car to proceed. With the motorman at his regular station in front the attempt began. The street-car in question is of a type known as a center entrance car, that is to say, that in the center of the car is the entrance for passengers as distinguished from that type of car which passengers enter from the ends. This center entrance is equipped with bars or handles, referred to throughout the case as grab-handles, being bars or stanchions projecting some four or five inches from the body of the car, and the said grab-handles are thus placed on either side of the entrance to facilitate the entry and exit of passengers. When the car started the conductor remained on the step of the car, sighting along the side thereof to observe the progress of the passage. The plaintiff, as noted, stationed himself near the end of his truck, and signaled with his arms to the motorman that he might proceed. The car was started and proceeded cautiously toward the truck. The front end of the car passed without interference. It then appeared to plaintiff that the grab-handles projecting from the side of the car could not permit through passage without collision. When these grab-handles were still six or eight feet distant from the truck plaintiff signaled to the motorman and shouted "Stop!" Thereupon, instead of stopping, the speed of the car was increased and the collision occurred. Plaintiff was struck by the truck and injured. It further appears that the plaintiff Peak in signaling to the motorman and conductor and directing the advance of the car was at all times in plain sight of said motorman and conductor. It also appears that up to 'the time of the signal to stop the car was going slowly and at a speed that would have permitted an immediate stop.

It is true that on many details there is a conflict on the facts as we have outlined them; but appellant concedes that we must disregard this conflict and accept for the purposes of this appeal the facts as made out by the respondent. In any event, the summary of facts thus made is sufficient to present the contentions presented on this appeal.

It is appellant's contention, giving respondents the benefit of all conflict, that the facts disclose such contributory negligence on the part of respondent as to preclude a recovery. Putting it in the language of appellant, "the plaintiff and defendant motorman were in substantially the same position, and saw the same things, and reacted in the same way to what they saw, and had the same opportunity of determining whether the grab-handle was or was not going to strike the truck; and the plaintiff, if he had foreseen the collision in time, could easily have saved himself from injury. Therefore, one of two things must necessarily be the case: either the motorman and plaintiff were both negligent in failing to see in time that the grab rail was going to strike the truck, or that they were both exercising due care when they failed to make that observation. It must be either one or the other, for it is impossible that one should be negligent and the other not negligent in failing to observe the same thing." We conclude, however, that the question is not so easily disposed of. Adopting appellant's theory up to a certain point, there is also the added circumstance that while the car was still seven or eight feet away from the truck plaintiff did anticipate the danger and directed the motorman to stop, and that the speed of the car, wholly under control of the defendant's employee, was increased and the collision followed. We might assume that up to the point of warning neither party was negligent or that if there was any negligence, then plaintiff was equally guilty thereof. However, there is evidence, as stated, that both the motorman and conductor were aware of the situation, and were proceeding as directed by plaintiff, and that when directed to stop they did just the opposite.

Without further analysis we think that the facts presented a question for the jury, and the finding of negligence on the part of defendant's servants and employees is supported by the evidence, and that no facts appear from which the law itself concludes contributory negligence on the part of plaintiff (*Gumb* v. *Railroad Co.*, 58 N. Y. Super. Ct. 1, 559, 9 N. Y. Supp. 316). ■ In order that this court could determine as a matter of law that respondent was guilty of contributory negligence it must be clearly shown

from the undisputed facts, judged in the light of common knowledge and experience, that a party has not exercised such care as men of common prudence usually exercise in positions of like exposure (*Nehrbas* v. *Central Pac. R. R. Co.*, 62 Cal. 320). The evidence against the plaintiff should be so clear as to leave no room for doubt, and the facts such that the inference is irresistible, to justify this court in determining, as a matter of law, plaintiff guilty of contributory negligence (*Schneider* v. *Market Street Ry. Co.*, 134 Cal. 487 [66 Pac. 734]; *Schurman* v. *Los Angeles Creamery Co.*, 81 Cal. App. 758 [254 Pac. 681]).

Many authorities are cited as to the standard of care required on the part of operators of street-cars in passing persons or vehicles on or dangerously near the car tracks. It would serve no useful or other purpose to attempt a differentiation of the cases cited. In no cited case are we presented with facts similar to those appearing here. We are content to hold that in this particular case the duty of care and watchfulness remained incumbent on the servants of defendant company throughout, and until the entire length of the car had passed the truck. With two operators aware of the immediate situation and its dangers, and with the plaintiff in full view advising of the nearness of the truck and the possibility of passage, it would be indeed a harsh and unusual rule that would hold the operators free from all further care as soon as the front end of the car passed in safety.

An interesting and instructive discussion on the law applicable is found in the case of *Davidson Bros. Co.* v. *Des Moines City Ry. Co.*, 170 Iowa, 467 [Ann. Cas. 1917C, 1226, 153 N. W. 59]. Without quoting therefrom it is sufficient to state that the views hereinbefore expressed find ample support therein. In Annotated Cases 1917C, at page 1229, following the report of the Davidson case, is an exhaustive annotation covering the entire subject, and citing authorities from many jurisdictions upholding the doctrine announced in the reported case.

Appellant contends that the trial court erred in its instructions to the jury, and that the error thus committed prejudiced the rights of appellant to an extent requiring a reversal of the judgment.

In this connection but two instructions given are called to our attention, viz.:

A. "I instruct you that it is the duty of the Key System Transit Company through its servants in control of its cars to exercise reasonable and ordinary care to avoid colliding with vehicles on or near its tracks, and the company is liable for the injuries or damage resulting if, through the inattention or carelessness of its servants, a car collides with a vehicle so near to the tracks that the car could not pass without striking it."

Discussing instruction A:

Appellant contends that this instruction entirely disregards the question of contributory negligence and, in effect, tells the jury that, regardless of any contributory negligence on the part of plaintiff, if the servants of the company were negligent the company is liable for the injuries or damage resulting. Thus premised, the argument is that the instruction is the equivalent of an instruction to find for plaintiff if the jury find that defendant was negligent. Having thus builded the case, appellant cites much authority to support the rule that where an instruction directs a verdict for plaintiff if the jury finds certain facts to be true, that instruction must embrace all of the things necessary to warrant the conclusion that the plaintiff is entitled to a verdict. The rule has no application here. It would be stretching the wording of the instruction beyond fair construction to hold that the jury were directed to bring in a verdict regardless of anything other than a showing of negligence on the part of defendant's employees. The scope of the instruction embraced only the substantive law of primary liability without reference to any defenses. This instruction was the first of the instructions given to the jury, excluding the general preliminary instructions on credibility of witnesses and burden of proof. The instructions which followed this very clearly and fully set forth the law of contributory negligence and its effect upon plaintiff's right to recover. The jury were instructed that the negligence of plaintiff proximately contributing in any degree whatever to plaintiff's injuries would necessitate a verdict in favor of defendant regardless of whether or not the jury should believe the defendant negligent. A trial

court is not required to state all of the law applicable to a case in a single instruction. The charge must be read as a whole. The instructions given should be considered in connection with each other; and if, without straining any portion of the language, the charge harmonizes as a whole and fairly and accurately states the law, a reversal may not be had because a separate instruction does not contain all of the conditions and limitations which are to be gathered from the entire charge. (24 Cal. Jur. 857, 860; *Weaver* v. *Carter*, 28 Cal. App. 241, 247 [152 Pac. 323]; *Lawrence* v. *Goodwill*, 44 Cal. App. 440, 455 [186 Pac. 781]; *Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689, 699 [89 Pac. 976].)

In *Mann* v. *Scott*, 180 Cal. 550, at page 560 [182 Pac. 281, 285], the court uses this strikingly appropriate language: "The instruction complained of, which is one of a series, cannot fairly be torn from its context for criticism."

We might concede that the doctrine of the cases last cited would not have application where the entire charge contained instructions flatly contradicting each other, and by reason whereof it would be impossible to say what instruction the jury followed (*Pierce* v. *United States Gas Co.*, 161 Cal. 176 [118 Pac. 700]; *Starr* v. *Los Angeles Ry. Co.*, 187 Cal. 270 [201 Pac. 599]). Such, however, is not the case here. There appears no conflict in the instructions.

 Appellant, in further attack upon this instruction, presents a second point. Before stating the contention it is to be noted that this last ground of attack is not disclosed in appellant's opening, but was reserved for the final brief. It is contended that the instruction positively directs the jury that "the Company is liable for injuries or damage resulting if, through the *inattention or carelessness* of its servants, a car collides with a vehicle." In other words, it is contended the jury was not required to find that the acts of the company's servants constituted negligence, or that plaintiff was free from contributory negligence, or that the acts of the servants of the company proximately contributed to the injury, but it was enough to find that they were guilty of some slight act of inattention.

What has been said before with reference to the duty of appellate courts to view the instructions as a whole has

equal application here. Appellant, anticipating this, argues that nowhere in any of the remaining instructions did the trial court define either the word "inattention" or the word "carelessness," so that the error was not cured by the giving of any other instructions.

The words complained of seem to require little defining. It seems plain to us that the instruction told the jury simply that the company was liable if the collision occurred through lack of attention or lack of care on the part of the employees. Necessarily the instruction must be applied to the then admitted facts of the case. It was admitted that when the car started after the attention of the employees had been directed toward the conditions existing and the nearness of the truck to the car track, these employees knew of the specific hindrance to be met. The case is quite different from the situation where a sudden emergency is met. Obviously, ordinary care under the circumstances was coextensive with attention and care during the brief space of time necessary to pass the anticipated possible obstruction. Where, as here, the street-car is moving a foot or two at a time in jerky motion, and all concerned in the transit have but one purpose, namely, to avoid an object with only a possible inch or two clearance, attention and care are essential elements of ordinary care, and the absence of either constituted negligence. A fair reading of the instruction renders it easily susceptible to this construction.

In addition, the jury were told that a street railway company is not an insurer against any casualty that may happen, nor is it liable for injuries that are merely accidental and which ordinary care could not have avoided; and were further told that unless a negligent act or omission of the defendant contributed proximately to the injury no action for damages could be founded upon it.

While we do not hold that in this case the instruction was erroneous, yet if it were subject to all of the criticism offered, nevertheless, as the supreme court states in *Hall* v. *Steele*, 193 Cal. 602 [226 Pac. 854], "When the instruction complained of here is read in connection with and in the light of the other instructions in the case, of which appellant does not complain, it cannot be said that the in-

struction, though manifestly erroneous, was prejudicial to a degree which would require a reversal of the case.''

Instruction B:

■ This instruction is as follows: ''I instruct you that in passing a vehicle beside the tracks it is the duty not only of the motorman to see that the front end of the car may pass safely, but also of the conductor in charge of the car to watch for and avoid obstructions the car may meet at any time before it has entirely passed.''

Appellant contends that this instruction invades the province of the jury, and in effect tells the jury that if the motorman and conductor did not see that the car passed safely, and did not avoid the obstruction, they were derelict in their duty. Appellant in presenting this point for our consideration in the same paragraph practically disposes of the contention in this language, which we might adopt: ''Probably no contention concerning instructions comes more frequently before the court than the contention that certain instructions invade the province of the jury, and it would undoubtedly be useless for us to enter into a discussion concerning the principles of law involved, principles which this court has had innumerable occasions to apply.''

However, the following cases indicate that the application of these principles does not sustain appellant: *Wirthman* v. *Isenstein,* 182 Cal. 108 [187 Pac. 12]; *Robinson* v. *Western States Gas etc. Co.,* 184 Cal. 401, 409 [194 Pac. 39.]

The instruction complained of is manifestly a preliminary announcement and sound enough in and of itself. In point of law it is the duty of the motorman to see that the front end of the car may pass safely, and it is also the duty of the conductor in charge of the car to watch for and avoid obstructions the car may meet at any time before it has entirely passed; but in point of law each has fulfilled his duty when he has exercised ordinary care and diligence under the circumstances. All this was abundantly set forth in numerous instructions and found in specific instructions proposed by the defendant and given by the court (*Lonnergan* v. *Stansbury,* 164 Cal. 488 [129 Pac. 770]). In almost every case when damages are sought by reason of negligence it is essential that there should be established a breach of some duty owing to plaintiff by defendant. If, in instruct-

ing a jury a court is not permitted to advise the jury as to what that duty is it would seem impossible for the jury to intelligently determine whether or not there had been any violation thereof. The case of *Wirthman* v. *Isenstein* is in point. There the trial court instructed the jury as follows: "All motor vehicles upon public highways must be provided at all times with adequate brakes kept in good working order." In approving the instruction the court says: "It will be noted that the court did not instruct the jury that a failure to perform the duty defined was in itself negligence, or, if negligence, a ground for recovery by plaintiff. It merely informed the jury concerning the duty of defendants in regard to the brakes in the language of the statute. The instruction was not given for the purpose of establishing the plaintiff's right to a recovery, but was purely incidental to the question as to whether or not, under all the circumstances, the defendants were driving the car negligently, and, in view of the evidence, was properly given."

Judgment affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1928.

All the Justices present concurred.