[Civ. No. 3939. Third Appellate District.—April 3, 1930.]

LESTER A. BACH et al., Respondents, v. C. SWANSTON & SON (a Corporation) et al., Appellants.

Len H. Honey and Butler, Van Dyke, Desmond & Harris for Appellants.

V. L. Hatfield, W. H. Hatfield and Martin I. Welsh for Respondents.

JAMISON, J., *pro tem.*—This is an appeal from a judgment for damages in favor of respondents growing out of an automobile collision that resulted in the death of Mary Bach, the mother of respondent minors and wife of respondent John Bach and that resulted in alleged injuries to the said John Bach.

The complaint contains two counts, the first of which is for damages for the death of the said Mary Bach and the second being for damages for the alleged injuries sustained by the said John Bach. This case was tried with a jury which returned a verdict for damages for the death of Mary Bach in the sum of $30,000 and a verdict in favor of the said John Bach for damages for the alleged injuries sustained by him in the sum of $6,000.

On the morning that the accident happened the said John Bach was driving his Chevrolet automobile north on Fourteenth Avenue in the city of Sacramento. With him in said automobile was his wife, Mary Bach, who was sitting in the back seat and a Mr. Benson who was sitting in the front seat to the right of the said John Bach.

Respondents' evidence was to the effect that when John Bach reached the intersection of said Fourteenth Avenue and Forty-fourth Street appellant Charles Swanston was about 100 feet east of said intersection proceeding west on said Forty-fourth Street and was operating a two and a half ton Reo truck loaded with meat; that said John Bach proceeded to cross the said intersection in a northerly direction at a speed of not exceeding ten miles per hour; that he had almost passed out of this intersection when his automobile was struck by the truck driven by the said Charles Swanston, who was traveling at the time of the impact at a high rate of speed somewhere in the neighborhood of forty to forty-five miles per hour. As a result of the collision Mary Bach and John Bach were hurled from their automobile. Mary Bach sustained injuries from which she shortly thereafter died and John Bach received injuries that necessitated his treatment at a hospital.

Respondents allege in their complaint that the said collision and resultant death of Mary Bach and injury to John Bach were caused by the negligence of appellant Charles Swanston.

In their answer appellants deny the said negligence and allege that the said John Bach was guilty of contributory negligence that directly and proximately contributed to the said death and injury.

There is ample evidence to support the verdicts of the jury that the said collision and resultant death and injury were caused by the negligence of appellant Charles Swanston and that the said John Bach was not guilty of any negligence that contributed thereto, and this appellants concede.

It was stipulated by appellants that, at the time of said collision, appellant Charles Swanston was driving the said truck as an employee of appellant C. Swanston & Son Company and at that time was acting in the course of his employment as such; that he was a minor and that he had an operator's license, the application for it having been signed by appellants Robert Swanston and Florence Swanston.

Appellants claim that the court erred in some of the instructions that were given to the jury; that it erroneously instructed the jury that appellants would be liable for the injury or pecuniary damage to deceased. Appellants predicate the alleged error upon the language contained in the instruction which reads as follows:

"A violation of a provision of law intended for the guidance of and prescribing the duties of persons in the use of a public highway, is of itself negligence, and if such negligence proximately causes injury to another who is himself without fault, the one so guilty of such negligence is liable to the one so injured for all of the damage proximately caused to such injured party."

Appellants argue that this instruction could be interpreted by the jury in but one way, that is to say, that the cause of action in favor of Mary Bach, as "one so injured" survived and was enforceable in this action. The construction placed upon this instruction by appellants is certainly a strained one. There is no cause of action here in favor of Mary Bach. So far as the death of Mary Bach is concerned the injured persons are her husband and children. Then again

the court very fully instructed the jury that respondents are not entitled to recover for any detriment sustained by the deceased prior to her death; that the jury was not to consider the question as to whether or not she suffered any pain prior to her death; that this action does not represent any right of action which she would have had had she survived her injuries; that respondents, if they can recover at all, can only recover for the pecuniary loss sustained by them, if any there be, on account of the death of deceased. There was no error committed in giving this instruction.

Appellants next contend that the court erroneously instructed the jury that respondents were entitled to recover irrespective of the defense of contributory negligence. An examination of the court's instructions shows that there is no substantial foundation for this alleged error. The particular instructions to which appellants call attention as substantiating this alleged error are as follows:

"The defendant, Charles Swanston, was bound to use reasonable care to anticipate the presence on Fourteenth avenue of other persons having equal rights with himself to be there, and a failure on his part to use such reasonable care would be negligence."

"Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault a compensation therefor in money, which is called damages."

Appellants claim that these last-quoted instructions ignored the question of contributory negligence and in effect direct a verdict for respondents in case the jury found that appellants were guilty of negligence. In support of this contention they cite *Beyerle* v. *Clift*, 59 Cal. App. 7 [209 Pac. 1015], and other cases, to the effect that if an instruction by its terms purports to state the conditions necessary to a verdict, it must state all of the conditions and must not overlook pleaded defenses on which substantial evidence has been introduced. This undoubtedly is the law, but these cases are not in point as applied to the last-mentioned instructions, for the reason that these instructions did not purport to state the conditions necessary to a verdict nor in any way direct a verdict.

In the case of *Douglas* v. *Southern Pac. Co.*, 203 Cal. 390 [264 Pac. 237], where the question of contributory negligence

was an issue, the court instructed the jury that if it found that the injury and death were caused by the negligence of employees while operating defendant's engine at the time of the accident the verdict should be for plaintiffs, since an employer is bound by the acts of his employees within the scope of their employment, and their negligence is, in law, deemed to be the employer's negligence. In commenting upon this instruction, Waste, C. J., delivering the opinion, said, in substance, that the authorities are legion that the so-called "formula" instruction must contain all the elements essential to a recovery, and the absence of any one of such elements may not be compensated for nor cured by a reference thereto in other instructions correctly and fully stating the law. However, this instruction did not purport to be a complete statement of the law upon which plaintiffs might recover, but served merely to inform the jury that responsibility attaches to a principal for the negligent acts of his servants committed within the scope of the latter's employment. The instruction constituted nothing more, in the opinion of the court, than an expression of the doctrine of *respondeat superior,* and this being so, need not set forth all the elements essential to a recovery by plaintiffs. The court further said that these several elements were fully and properly expressed to the jury in the many other instructions given by the court. To the same effect is *Peak* v. *Key System Transit Co.,* 88 Cal. App. 354 [263 Pac. 578], wherein the court, in passing upon an instruction similar to those quoted in the instant case, said: "The scope of the instruction embraced only the substantive law of primary liability without reference to any defenses."

Furthermore, in the case now before the court, the jury were very fully and clearly instructed upon the law of contributory negligence, together with the effect it would have upon the right of respondents to recover, and in that connection the court instructed the jury that if respondent John Bach was guilty of negligence in the slightest degree that contributed to the said death of Mary Bach and injury to John Bach respondents could not recover.

The next alleged error of the court complained of by appellants is that the trial court erroneously instructed the jury it could award damages to John Bach for alleged permanent injury suffered by him from said collision. The

portion of the instruction of which appellants complain is as follows: "You may consider whether or not the injury to the plaintiff, John Bach, is permanent in character."

The date of the accident was August 14, 1928, and the date of the trial was June 25, 1929. At the trial John Bach testified that at the time of the accident his occupation was that of an antomobile mechanic and that he was strong and healthy and could do all kinds of heavy work; that his injuries consisted of a fractured hip and broken shoulder in consequence of which he could no longer do any hard work or heavy lifting; that his hearing is affected and he is nervous and has dizzy spells; that he did not have the use of his shoulder; that two of his fingers are numb, and that he does not sleep well. The only expert who testified in the case was Doctor Von Geldern. Appellants maintain that the testimony of this witness conclusively established the fact that the effect of the said injuries received by respondent John Bach were not of a permanent character. Upon direct examination, after testifying that he found a fracture of the left clavicle and a fracture of the hip bone, he stated that he believed the injuries would clear up and not leave permanent disability. Upon cross-examination he testified that the clavicle and hip were entirely healed and that he could see no reason why there should be any disability in either. Further testifying regarding the hip fracture he was asked: "Q. So, at the time, after the time it required the fracture to heal, this man would be all right, is that it? A. Yes; that is just one point might be here, there, you can see on either side there is some depression (referring to X-ray plates). In other words, the joint from this muscle region is affected in some places, that is true. Now whether that change in position of the muscle will make any difference, I do not know—in the strength." But he further testified that in the course of a year or so, after healing it would then get in position and function in a fairly normal way and that there was no reason why it should create any weakness. On redirect examination he was asked the following question: "Q. Might there be a consequence attached to the changed muscles that you could not estimate?" To which he replied: "A. That is possible. But a fracture of this sort does not leave any permanent injury. That there may be, I would not say in any individual case there will not be some disturbance—on

the other hand, the patient may have subjective symptoms that could not be brought out by examination.''

We think there is evidence from which the jury might draw the inference that the effect of the injury was of a continuing and permanent nature. The expert does not positively state that disturbances growing out of the injuries sustained by respondent John Bach will not continue. On the contrary, he says that the changed muscle he found upon examination of respondent John Bach's hip may have subjective symptoms that could no be brought out by examination.

The jury are not concluded by the testimony of the expert. (*May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789].) Expert testimony is to be given the weight to which it appears to be entitled. The law makes no distinction between that kind of testimony and evidence of other character. (*State Comp. Ins. Fund* v. *Industrial Acc. Com.,* 195 Cal. 174 [231 Pac. 996].)

Appellants offered an instruction to the effect that passion, prejudice and sympathy should not enter into the consideration of the case by the jury. The court refused to give this instruction on the ground that the matters contained therein were covered by other instructions that were given. We are of the opinion that these matters were sufficiently placed before the jury in other instructions given by the court.

During the cross-examination of H. Moradian, a witness produced by respondents, who testified that he witnessed the said collision, he was asked, for the purpose of impeachment, if he had not made certain statements to Mr. Desmond, one of appellants' attorneys, and another man who was pointed out in the courtroom, but whose name was not given, contradictory to the facts testified to by witness while on the stand. At this stage of the proceedings, Mr. Welsh, who was one of respondents' attorneys, evidently with the view of establishing the identity of the man referred to and pointed out, remarked, ''That was the insurance adjuster.'' Thereupon attorney for appellants assigned the remark as prejudicial misconduct upon the part of respondents' attorney and moved for the discharge of the jury. The court denied the motion and admonished the jury to disregard the remarks of the attorney, with instruction to decide the case ex-

clusively on the evidence and the instructions of the court. Later on in presenting their evidence, appellants placed W. B. Winters, presumably the man pointed out, on the stand for the purpose of impeaching the said Moradian and upon direct examination Winters testified that he was an adjuster, employed by the Union Automobile Insurance Company, and as such investigated the said accident, and interviewed the said Moradian in relation to same. Appellants claim that the said remarks of respondents' attorney were of such prejudicial nature as to require a reversal of the judgment in this case.

There is abundant authority to the effect that efforts of plaintiffs' counsel to get before the jury the fact that defendant is insured against loss are prejudicial and where the evidence is closely balanced justifies a reversal. However, in this case we do not feel that such a drastic result should follow, first, because the inference is not clear that the purpose in making said remarks was to get before the jury the fact that appellants were insured or that the jury so interpreted the said remarks, next, because the court promptly instructed the jury to disregard them and, lastly, because the evidence in this case, upon the issues involved, is by no means equally balanced, but, on the contrary, largely preponderates in favor of respondents.

Appellants vigorously maintain that each of the verdicts is excessive. At the date of the accident Mary Bach was forty years of age, with an expectancy of life of 28.18 years. She was in good health, did all of her housework, washing, ironing, mending and sewing for her family, was an affectionate and loving wife and mother, was attentive to the children, devoting herself to their moral and educational training and made a harmonious home for them and her husband. Respondent John Bach was thirty-eight years of age at the date of the accident and the ages of the four children ranged from five to twelve years. In the case of *Redfield* v. *Oakland C. S. Ry. Co.*, 110 Cal. 277 [42 Pac. 822, 1063], which was tried in 1895, and which was an action for damages prosecuted by the husband and minor children for the death of the wife and mother, the court held that a verdict for $14,000 was not excessive. In that case the court said:

"It is true that in all such cases it is difficult to fix the definite money value of the services of such a wife and mother. Precise accuracy in that regard is not capable of being attained either by a court or jury."

In the case of *Valente* v. *Sierra Ry. Co.*, 158 Cal. 412 [111 Pac. 95, 98], tried in 1910, and which was also an action by the husband and minor children for damages for the death of the wife and mother the court held that a verdict of $14,000 was not at all excessive, and in the course of the opinion delivered in that case said:

"Manifestly, there can be no fixed standard by which that loss can be determined. Necessarily the law committed its ascertainment to the discretion and sound judgment of the jury, and it cannot be said that for the loss of a devoted wife and mother and deprivation by the husband and minor children of the advantages and benefits which, from the evidence in this case, the jury were warranted in finding she would continue to bestow on them had she lived, that the verdict rendered by the jury is at all excessive."

In the case of *Froeming* v. *Stockton Elec. R. R. Co.*, 171 Cal. 401 [Ann. Cas. 1918B, 408, 153 Pac. 712], tried in 1915, the court held that a verdict for $18,000 in favor of the husband and children for the death of the wife and mother was not excessive. In the recent case of *O'Meara* v. *Haiden*, 204 Cal. 354 [60 A. L. R. 1381, 268 Pac. 334], in which the question of excessive damages was before the Supreme Court, Curtis, J., delivering the opinion of the court, said that the courts approved of verdicts to-day which would have been unhesitatingly set aside ten or fifteen years ago, and ascribes this change to the fact that measured in money the earning capacity of most men has increased, and that measured by its purchasing power the value of the dollar has decreased; that the courts of this state must, as the courts in other jurisdictions have done, in passing upon this question, take judicial notice of the fact that the value of the dollar has materially changed from what it was some ten or fifteen years ago; that a given sum when measured by its purchasing power is far less than it formerly was.

Regarding the injuries claimed to have been sustained by John Bach as a result of said accident it appears from the evidence that he was thrown from his automobile and rendered unconscious and so remained for several hours;

that he was taken to a hospital and was confined there by his injuries for a month; that prior to the accident he was a strong, robust man, was an automobile mechanic doing and capable of doing all kinds of heavy work; that as a result of the accident his left clavicle and his hip bone were fractured; that he suffered a good deal of pain from the injuries and up to the date of the trial, which occurred nearly a year after the accident, had not recovered from the injuries; that he cannot do any heavy lifting; that if attempted it makes his head weak, has dizzy spells, has affected his hearing; that his shoulder is not as good as it was before the accident and two of his fingers are numb; that two months after the accident he returned to his work, but can perform only light work.

In their motion for a new trial, appellants assigned, as one of their grounds for setting aside both verdicts, excessive damages, appearing to have been given under the influence of passion or prejudice, which motion was denied by the court.

 It has been decided a number of times by the Supreme and Appellate Courts that upon appeal the decision of the trial court and jury cannot be set aside on the ground that the damages are excessive unless the verdict is so outrageously excessive as to suggest at the first blush passion, prejudice or corruption on the part of the jury. (*Lahti* v. *McMenamin,* 204 Cal. 415 [268 Pac. 644]; *Reneau* v. *Hirsch,* 88 Cal. App. 1 [262 Pac. 1100].)

There is nothing in the record in this case indicating that the jury, in the rendition of the verdicts, was actuated or influenced by passion, prejudice or corruption or by anything other than its best judgment and the honest conviction of the individual jurors. Under these conditions we do not feel that the amounts of the verdicts are such as would justify this court in reversing the judgment or require that it should so do.

 In addition to the other errors which appellants contend that trial court committed in the course of the trial they claim that it instructed the jury on matters of fact. We deem it unnecessary to discuss this alleged error further than to say that it is without merit.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.