[Civ. No. 9045. First Appellate District, Division Two.—December 7, 1933.]

STEPHEN M. KERRISON et al., Respondents, v. WILLIAM UNGER et al., Appellants.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellants.

Edwin V. McKenzie and Frank J. Mahoney for Respondents.

STURTEVANT, J.—In the forenoon on August 29, 1931, the defendant William Unger was driving an automobile southerly from San Francisco toward San Mateo, for the purpose of locating employment. The automobile was owned by his sister and her husband, Ann U. Daniels and Benjamin F. Daniels, who had loaned to their co-defendant the automobile for the purpose of making the trip. When approaching Mount Olivet Cemetery the defendant Unger struck Clara E. Kerrison, knocking her down and causing such injuries that she died shortly thereafter. For damages suffered by them the plaintiffs, one son and four daughters, commenced this action. All of the plaintiffs are adults, the youngest one being thirty-four years of age. All of the defendants answered and from a verdict in favor of the plaintiffs they have appealed.

The defendants present four points. The first and third are but different methods of presenting the contention that there is no statutory authority authorizing the plaintiffs to maintain this action. Section 377 of the Code of Civil Procedure is as follows: "When the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case, may be just." Section $1714\frac{1}{4}$ of the Civil Code, among other things, provides: "Every owner of a motor vehicle shall be liable and responsible for *the death of or injury to* person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner provided that the liability of an owner for imputed negligence imposed by this section . . . shall be limited to the amount of five thousand dollars for *the death of or injury to* one person in any one accident . . . and provided that in any action against an owner on account of imputed negligence as imposed by this section the operator of said vehicle whose negligence is imputed to the owner shall be

made a party defendant provided personal service of process can be had upon said operator within this state, and upon recovery of judgment, recourse shall first be had against the property of said operator so served;

"*Subrogation.* And provided, further, that in the event a recovery is had under the provisions of this section against an owner on account of imputed negligence such owner shall be subrogated to all the rights of the person injured or whose property has been injured and may recover from such operator the total amount of any judgment and costs recovered against such owner; . . . "

The plaintiffs filed a complaint which contained two counts. In the first count it was charged that William Unger was the servant, agent and employee of his codefendants. In the second count it was charged that Mr. and Mrs. Daniels were the owners of the automobile, and that Mr. Unger was driving it with their knowledge, permission and consent. On the trial it transpired that Mr. Unger was not the servant, agent or employee of his codefendants and the contention made at this time presents the question as to whether the owners of the automobile are, under the statutes of California and evidence that was introduced, liable for an action as for wrongful death. In presenting the point the defendants cite section 377, Code of Civil Procedure, and thereupon they assert that that section is not addressed to imputed negligence. They then cite section 1714¼, Civil Code, and they contend that the latter section is not applicable in a death case. The plaintiffs reply that all code sections relating to a particular subject are *in pari materia* and should be read and considered together; that the four codes should also be read together; and that they should be construed as parts of one statute. Continuing, the plaintiffs contend that, when the several provisions of the code are so construed, it is clear the plaintiffs were entitled to maintain an action on the theory as pleaded in the second count of their complaint. Both parties concede at once that "at common law a civil action for damages for the wrongful death of another could not be maintained by anyone. Such a right of action is not an inherent one, and it did not survive the death of either person to or by whom the wrong was done. The common-law rule was *actio personalis moritur cum persona*—the

person committing the wrongful act causing death was wholly immune from any action of a civil nature. Human life was considered to be of such a character that its wrongful destruction could not be measured in terms of money. Where, therefore, an action for wrongful death now exists it is the creature of statute and exists only so far in favor of such persons as the legislative power has declared." (8 Cal. Jur. 948.) In giving a new cause of action section 377, Code of Civil Procedure, extends to deaths " . . . caused by the wrongful act or neglect of another. . . . " Standing alone that section would not support the plaintiffs. However, section 1714¼, Civil Code, made certain things actionable that were not actionable theretofore. By its terms it expressly includes death cases. Another call of the statute is that the act complained of must result "from negligence in the operation of such motor vehicle . . . " Still another call of the statute is that the negligence of the operator will be imputed to the owners if the operator was acting "with the permission, express or implied, of such" owners. These several calls extend the cause of action theretofore defined in section 377, Code of Civil Procedure, that is, they extend its operation to cover acts of imputed negligence. It has been held that section 377, Code of Civil Procedure, in so far as it made the operator of the instrumentality and his employers liable, created a joint and several liability. (*Grundel* v. *Union Iron Works*, 127 Cal. 438, 441 [59 Pac. 826, 78 Am. St. Rep. 75, 47 L. R. A. 467].) Following the same reasoning section 1714¼, Civil Code, creates a joint and several liability against all of these defendants. All of these matters being considered we have no doubt that when both statutes are read together the plaintiffs have a cause of action as claimed. The defendants cite *Kramer* v. *Market Street R. Co.*, 25 Cal. 434. It is not helpful. The statute under consideration in that case created a cause of action for wrongful death and among other things provided that the action could be maintained by the "personal representatives". Not the decedent's representative, but his father attempted to maintain the action. The court held he could not do so. The defendants also cite *Pritchard* v. *Whitney Estate Co.*, 164 Cal. 564 [129 Pac. 989]. The statute before the court in that action

stated that certain actions could be commenced on behalf of certain relatives, naming them, but not naming a nephew. Nevertheless, the plaintiff, as administrator, attempted to maintain the action on behalf of a nephew only. The court held that could not be done. Neither decision contains anything opposed to what we have said.

██ After the jury had deliberated on its verdict for a while it returned into court with a verdict for plaintiffs, awarding $3,000 damages against the defendant Unger and $2,000 damages against the defendants Daniels. The trial court refused to accept it and directed the jury to retire and further consider its verdict. Later the jury returned into court and presented a verdict awarding $5,000 damages against the defendant Unger and $5,000 damages against the defendants Daniels. The defendants concede that if the verdict was informal or insufficient the action of the trial court was proper. However, they contend the verdict was neither informal nor insufficient. In this connection they state a hypothetical case where the damages against the operator might be $30,000 or more, as damages for the death of one person. Following the provisions of section 1714¼, Civil Code, they point out that in the same hypothetical case the damages against the owners could not be in excess of $5,000. The illustration is not convincing. In the instant case the jury had the right under the law and the evidence to bring in a verdict against the operator of the automobile for less than $5,000; but, if it did so, under the clear terms of the statute the damages against the owners should have been in the same sum. The first verdict was not in proper form. The court did not err in sending the jury back. (27 R. C. L. 890.)

██ The defendants earnestly contend that the award of $5,000 is grossly excessive. The plaintiffs with the same earnestness contend to the contrary. We agree with the contention made by the plaintiffs. The decedent was sixty-eight years of age at the time of her death. She had an expectancy of about ten years. The proof ran in two different channels. There was evidence that the decedent contributed to Mrs. West, one of her daughters, spending money and money for clothes, and during the year preceding her death she so contributed to Mrs. West

$125. To another daughter, Mrs. Warren, the contributions in money extended over the period of 1927 to 1931 and amounted to $600, or $120 annually. On this data the jury could have found that if the decedent had not been killed she probably would have made further contributions in the sum of $2,450 during the remainder of her life expectancy. On the date of the death of her husband the decedent went to live with another daughter, Mrs. Olcott. The household consisted of Mr. and Mrs. Olcott, Mrs. West and the decedent. For two years prior to the date of the accident Mrs. Olcott was the proprietor of a candy store. Mrs. West was employed to assist her. During that period the decedent kept house for Mrs. Olcott's family. She did a great deal of the housework, the greater part of it, although Mrs. Olcott assisted. The decedent did the cooking and made Mrs. Olcott's clothes. As to the reasonable value of the services of a housekeeper in such a household there was no direct evidence. While the decedent was in Mrs. Olcott's home she paid $40 per month for her board and room until the last five or six months, and then she paid $20. This court will take judicial notice of the fact that many servants are compensated in part by being furnished board and room and the balance at so much money per month. We cannot say that some are not paid a fixed sum and a charge over for board and room. If the jury found the services of the decedent as housekeeper, cook and seamstress were worth $50 per month, she paying for her board and room, this court may not say as a matter of law that it erred. The contributions of such services were therefore an additional factor of from $1200 to $3,600, depending on the charge for board and room and the changing value of the service rendered. Her income from rents and dividends amounted to $41 per month. She received from her son $20 to $30 per month. Her total receipts varied from $744 to $852 annually. Considering all of these facts we are unable to state that the amount allowed is so plainly unjust and oppressive as to suggest passion, prejudice or corruption on the part of the jury.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

'A petition for a rehearing of this cause was denied by the District Court of Appeal on January 6, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 5, 1934.