[Civ. No. 7308.   Third Dist.   Mar. 18, 1947.]

ADDIE BROWN et al., Respondents, v. GEORGE B. BOEHM et al., Appellants.

Peters & Peters for Appellants.

Jack M. McPherson and Charles H. Andrews for Respondents.

ADAMS, P. J.—This is an appeal from a judgment for $25,000 awarded to the widow and five adult children of Ernest Brown, deceased, who lost his life in an automobile accident which, it is admitted, was due to the negligence of defendants. The only contention made by appellants is that the award is excessive; and their plea is not that a new trial be ordered as to the amount of damages, but that this court reduce the amount thereof. The record shows that in the lower court a motion for a new trial was made by defendants, one of the grounds therefor being excessive damages appearing to have been given under the influence of passion and prejudice, and that said motion was denied.

Under such circumstances what is the duty of an appellate court? In *Bond* v. *United Railroads*, 159 Cal. 270, 285-286 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687], the Supreme Court said that the remedy for excessive verdicts "is practically committed entirely to the judge who presides at the trial in the court below"; that if he does his duty he will carefully weigh the evidence himself, and will not allow a verdict to stand for its full amount if he believes it gives more damages than the pecuniary loss that it may be reasonably supposed the plaintiff will actually suffer by being deprived of the services, earnings, society, comfort, and protection of the deceased; and that the power of appellate courts over damages "exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury (see *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 716 [106 P. 83] ; *Wheaton* v. *North Beach etc., Co.*, 36 Cal. 591). Practically, the trial court must bear the whole responsibility in every case."

The rule of that case has been applied in numerous subsequent decisions. In *Morris* v. *Standard Oil Co.*, 188 Cal. 468 [205 P. 1073], it was cited. There the trial court, in passing upon a motion for a new trial, said, regarding the contention that the damages were excessive, that it considered the award excessive, but that the appellate court was better able to reduce it to a proper amount. The Supreme Court said that while it agreed with the trial court on the subject, it was not the duty of the appellate court to fix the amount of the verdict; that "This duty we do not feel should be imposed upon us. This is not the province of appellate courts. The duty is one that is imposed on the trial court." The judgment was re-

versed and the cause remanded to the trial court to retry the issue of the amount of the damages.

In *Griffey* v. *Pacific Electric Railway Co.*, 58 Cal.App. 509 [209 P. 45], an action under section 377, Code of Civil Procedure, the trial court granted a new trial on the ground of excessive damages. Its order was sustained on appeal, the court citing the Bond case to the effect that it was the duty of the trial court on such a motion to weigh the evidence, that the remedy was practically committed to the judge who presided at the trial, and that its order should not be reversed unless it plainly appeared that it had abused its discretion; that "Every intendment is to be indulged here in support of his action, and it will not be disturbed if the question of its propriety is open to debate"; that "even though there be no conflict in the evidence as to the nature and extent of the pecuniary losses suffered by the plaintiffs, nevertheless, the probative force and effect of the evidence upon that phase of the case is ultimately for the determination of the judge of the trial court upon the hearing of the motion for a new trial.

In *Holmes* v. *Southern California Edison Co., ante,* pp. 43, 50-52, [177 P.2d 32], the court said: "The powers and duties of a trial judge in ruling on a motion for new trial and of an appellate court on an appeal from a judgment are very different when the question of an excessive award of damages arises. The trial judge sits as a thirteenth juror with the power to weigh the evidence and judge the credibility of the witnesses. If he believes the damages awarded by the jury to be excessive and the question is presented it becomes his duty to reduce them. (*Fisher* v. *Zimmerman,* 23 Cal.App.2d 696 [73 P.2d 1243]; *Sassano* v. *Roullard,* 27 Cal. App.2d 372 [81 P.2d 213].) When the question is raised his denial of a motion for new trial is an indication that he approves the amount of the award. An appellate court has no such powers. It cannot weigh the evidence and pass on the credibility of the witnesses as a juror does. To hold an award excessive it must be so large as to indicate passion or prejudice on the part of the jurors. Generally speaking, in cases of this kind, when damages are recovered for the destruction of property, if there is substantial evidence in the record supporting the damages awarded by the jury and it is inferentially approved by the trial judge by his denial of a motion

for new trial without reducing the damages, we are powerless to reduce them or to hold the award excessive.''

In this state there is no set rule for fixing the damages that may be recovered in an action such as this. Section 377 of the Code of Civil Procedure provides that in actions thereunder, such damages may be given as, under all the circumstances of the case, may be just. In *Gilmore* v. *Los Angeles Railway Corp.*, 211 Cal. 192, 198, 200 [295 P. 41], the court said that the measure of damages as to the surviving wife was the pecuniary loss suffered by her by the deprivation of her legally enforceable rights of support; and that in addition thereto loss of comfort, protection and society was a proper element of injury and that it was by no means to be classed as compensable by merely nominal damages. In that case an award of $7,500 to the widow and three adult daughters of decedent was held not to be excessive, though none of the daughters was dependent upon decedent, he did not contribute to their support, and he was 79 years old at the time of his death. In *Schulman* v. *Los Angeles Ry. Corp.*, 44 Cal. App.2d 122, 130 [111 P.2d 924] (1941), a judgment for $2,500 awarded to the adult children of a deceased mother who was 65 years of age, and was not supporting said children, was held not excessive as the pecuniary value of the loss of society, comfort, and protection which the death of their mother had occasioned. In *Corvin* v. *Hyatt*, 10 Cal.App.2d 107 [51 P.2d 176] (1935), a verdict for $5,000 for the death of plaintiffs' mother who was 77 years old was held not excessive, though the four surviving children were adults and decedent was not earning over $100 per year. In *Coughman* v. *Harman*, 135 Cal.App. 49, 58 [26 P.2d 851] (1933), the widow of decedent was awarded a judgment for $5,000 for his death attributed to the negligence of defendant. A motion for a new trial was denied. Deceased was 83 years and nine months old at the time of his death, had a life expectancy of but 3.20 years, and was earning $50 per month, was in good health and mentally sound. It was urged that the award was excessive, because, in 3.20 years he would have earned $1,920, one-half of which would probably have been used for his own support, leaving but $960 for the support of plaintiff. But this court said: ''There is nothing in the record indicating that the jury was actuated by malice or a desire to award the plaintiff an undue sum of money as damages for the losses sustained by her. While the mortality tables allowed the

deceased only 3.20 years in which to live, those tables are only an approximation of how long anyone may be said to survive, and by no means constitute an absolute limit as to how many years a person of sound mind and body may remain alive. Common experience teaches us that many individuals live beyond the period of life which the tables would have allotted to the deceased in this case. We do not very well perceive how this court can say as a matter of law that the sum of $4,000 is an excessive sum to award a widow for the loss of the comfort, protection and society of her husband, even though mortality tables limit his supposed span of life to a very few years. There being nothing to indicate passion or prejudice on the part of the jury, we find no reason for disturbing the verdict on the grounds of excessive damages. A human life, if worth anything to another, is certainly worth at least the sum of $4,000.'' In *Bach* v. *C. Swanston & Son,* 105 Cal.App. 72 [286 P. 1097] (1930), a verdict for $30,000 for the death of a wife aged forty years, in favor of her husband and four minor children, was upheld. In *Kerrison* v. *Unger,* 135 Cal.App. 607 [27 P.2d 927] (1933), five adult children of decedent brought the action for damages for the death of their mother, aged 68 years, and an award of $5,000 was held not excessive. In *Redfield* v. *Oakland C. S. Ry. Co.,* 110 Cal. 277 [42 P. 822, 1063] (1895), a verdict for $14,000 for death of a wife and mother aged 35 years, who left a surviving husband and two minor children, was held not excessive. It was said that the court could not interfere unless the amount of the award was so excessive that it appeared to have been given under the influence of passion or prejudice. In *Froeming* v. *Stockton Electric R. R. Co.,* 171 Cal. 401, 414 [153 P. 712, Ann.Cas. 1918 B 408] (1915), a verdict for $18,000 for the death of a mother who left a husband and several minor children was held not excessive. In *Valente* v. *Sierra Ry. Co.,* 158 Cal. 412, 419 [111 P. 95] (1910), a $14,000 verdict for the death of a mother in favor of the husband and four minor children was held not excessive. The award was, in effect, for loss of society, comfort and care. In *Nitta* v. *Haslam,* 138 Cal.App. 736, 145 [33 P.2d 678] (1934), a verdict for $20,320 for death of a mother aged 32, who left as survivors her husband and three minor children, was affirmed. The court said while the judgment was large it could not be said to be excessive unless it appeared that it was the result of passion, prejudice or corruption on the part of the

jury. In *McLaughlin* v. *United Railroads,* 169 Cal. 494 [147 P. 149, Ann.Cas. 1916 D 337, L.R.A. 1915 E 1205] (1915), a verdict for $7,500 in favor of one minor and two adult daughters of a widowed mother was sustained, where a motion for a new trial had been denied by the trial court. In *Weaver* v. *Shell Co.,* 34 Cal.App.2d 713, 722-723 [94 P.2d 364] (1939), a verdict in favor of the widow and two minor children of a decedent for $40,000 was sustained, the trial court having denied a motion for a new trial. Decedent was 37 years of age and was earning $150 to $200 per month, or $1,800 to $2,400 per year; the two children were approaching their majority.

In considering an attack upon a verdict as excessive, the appellate court must treat every conflict in the evidence as resolved in favor of respondents and must give them the benefit of every inference that can reasonably be drawn in support of their claim. (*Wiezorek* v. *Ferris,* 176 Cal. 353, 358 [167 P. 234]; *Wallace* v. *Pacific Elec. Ry. Co.,* 105 Cal. App. 664, 672 [288 P. 834].)

In *Ware* v. *McPherson,* 213 Cal. 120, 121 [1 P.2d 433], the court said that on appeal a verdict must be ''so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury,'' before it can be held excessive. Also see *Corvin* v. *Hyatt, supra,* and *Bach* v. *C. Swanston & Son, supra,* to the same effect. And in *Lasater* v. *Oakland Scavenger Co.,* 71 Cal.App.2d 217, 220 [162 P.2d 486], in which the Supreme Court denied a hearing, it was said that: ''There is no fixed and absolute yardstick by which a court on appeal can measure the value 'of these elements of ·damage, it being sufficient if the amount awarded appears to bear a reasonable relation to the elements of loss entitled to be considered by the jury, and the fixing of the amount is committed first to the sound discretion of the jury and second to the like discretion of the trial judge in passing on a motion for new trial. (8 Cal.Jur. 1023, 1024.)''

In *Zibbell* v. *Southern Pacific Co.,* 160 Cal. 237 [116 P. 513], it was said that the only method of determining whether a verdict is excessive is by comparing the amount of damages awarded with the evidence. Considering the evidence adduced in this case in the light most favorable to respondents, and giving them the benefit of every inference that reasonably can be drawn therefrom, it shows the following.

At the time of his death Ernest Brown was 61 years of age and, according to mortality tables, had a life expectancy of

13.47 years. His wife was 54. They were married in Osborn, Nebraska, on August 17, 1923. Of that marriage one child was born, namely, Virginia Chandler, one of the plaintiffs. At the time of the marriage, Mrs. Brown had four small children by a prior marriage, and Mr. Brown had four minor children by a prior marriage. On the same date, decedent's eldest daughter was married and became Velma Harmon, and upon her marriage she left her father's home where she had been residing. The other children of both the parties were brought to the four-room home of Mrs. Brown and were there reared together. The girls remained in that home until they married, and Vernon Brown remained there until he was 22 years old. On November 2, 1936, he moved to California. For a year while her husband was in overseas service, Virginia lived with Mr. and Mrs. Brown and in the family home and contributed toward the household expenses. Decedent was a painter and interior decorator; he kept no books, had no business place, and operated out of the family home, taking jobs and doing them himself; before the accident his health was good; he never had had a doctor and was steadily employed; his widow stated that his earnings were ''around about two or three thousand a year''; he also was a violinist, and Mrs. Brown played the piano, and they sometimes furnished the music for dances, and for such service ''once in a great while they would take up a collection and give him money and sometimes he did it just for the fun of it''; aside from money received for his work, sometimes ''they gave him commodities like chickens or eggs, milk''; the town where they lived and he worked was a small country town; if he wasn't working at his trade he would take any kind of work. Mrs. Brown stated that decedent always helped his children if any of them needed any help. Some years before his death he gave an unknown amount of financial assistance to his then married daughters, Velma Harmon and Vaveta Morse; Vaveta became ill in Texas and was brought to the Brown's home in Shubert, Nebraska, where Mrs. Brown took care of her until she was able to go to work; she stayed at the home for a year and the Browns kept her children for about two years while Vaveta worked. Mr. and Mrs. Brown visited his two children in Boise, Idaho, and Vernon Brown and her son Delbert M. Townsend in California on three different occasions in the four years preceding his death; after they married and left home some of the children visited their parents at Shu-

bert, Nebraska. One of the sons testified that his father and mother had visited him in California on three different occasions; that his father had not helped him with money since he left home because he did not need it, but that while still at the home in Nebraska he had pneumonia after he was 21 years of age, and was in bed from February 24th to May 11th; that his father brought in a doctor and "cared for me, stayed up day and night for me; he bought everything that was to be had because I never had it. He paid the doctor's bills. I never had any money at the time"; that his parents were sociable and friendly and were very happy together; that they fished together and they liked to dance; that they arrived in California on the last visit two or three days prior to the accident; they stayed part of the time with Delbert Townsend, her son by a prior marriage; on each of their visits to California they stayed on an average of two months or more, except the last visit when the accident occurred. The relations between decedent and his children and their families were apparently very friendly. The Browns always sent them Christmas presents, sometimes sent clothes for the children, and while visiting with them Mr. Brown bought groceries and took them to shows.

In view of the foregoing evidence it cannot be said that the verdict is "so plainly and outrageously excessive as to suggest, at first blush, passion or prejudice or corruption on the part of the jury." (*Ware* v. *McPherson, supra.*) The widow's testimony shows that decedent had a yearly income of $2,000 to $3,000, and if we take the figure of $2,500 per annum and assume that decedent would have lived out his expectancy of 13.47 years, his earnings would have been $33,675; and assuming—though it does not necessarily follow—that one-half of that amount would have been required for his own support, $16,837.50 would have been left for the support of his wife. Funeral expenses, etc., amounted to $739.73, and the award of $25,000 would thus leave $7,423.77 as compensation to the six plaintiffs for the loss of comfort, society and protection. If, as was held proper in *Corvin* v. *Hyatt, supra,* $5,000 was not excessive as compensation for the four adult surviving children of a mother, aged 77 years, such an amount should not be held excessive for the five surviving children of decedent Brown; and we cannot say that $2,423.77 would be excessive as compensation for the loss to Mrs. Brown of the comfort, society and protection of her husband.

It is true, of course, as argued by appellants, that Brown's earning capacity might have decreased with advancing years; but it is also within the range of possibility, in view of the housing situation and the per diem which is now being paid for painters and paper hangers, that his earnings might have increased; also, as was said in *Coughman* v. *Harman, supra,* mortality tables by no means constitute an absolute limit of the span of life; and decedent might have lived much longer than the 13.47 years allotted to him, and without an appreciable decrease in his earnings. ■ There is also the further consideration that the value of the dollar has decreased substantially, thus making awards in earlier cases unsubstantial as yardsticks for measuring verdicts during the postwar times. In *O'Meara* v. *Haiden,* 204 Cal. 354, 367 [268 P. 334, 60 A.L.R. 1381], this was recognized, and the court said, quoting from a decision in a Minnesota case, that in recent years there had been a noticeable increase in the size of verdicts in personal injury cases, and the courts had approved verdicts which they would, some years before, have set aside as excessive; that measured in money the earning capacity of most men had increased and the value of the dollar decreased; and that it is proper to take these well-known facts into consideration. Similar views were expressed in *Lasater* v. *Oakland Scavenger Co., supra,* at page 220; *Sim* v. *Weeks,* 7 Cal.App. 2d 28, 43 [45 P.2d 350]; *House* v. *Pacific Greyhound Lines,* 35 Cal.App.2d 336, 341 [95 P.2d 465]; *Bach* v. *C. Swanston & Co., supra.*

The foregoing satisfies us that the award cannot be said to be without support in the evidence, or to be so outrageously excessive as to justify a conclusion that it was impelled by passion, prejudice or corruption. And in view of the fact that the trial court who heard and saw the witnesses, and presumably weighed the evidence on the motion for a new trial, was satisfied with the amount of the verdict, and every intendment is to be indulged here in support of its action, the judgment is affirmed.

Peek, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 15, 1947.