## JOHN C. AYRES *v.* JOHN BENSLEY, F. DUMAR-THERY, M. COMPTON, FREDERICK MASON, AND THE CITY AND COUNTY OF SAN FRANCISCO.

DEFENSE OF PENDENCY OF ANOTHER ACTION.—The defense of the pendency of another action is not available, unless the causes of action and the plaintiffs, at least, in both actions, are the same.

IDEM.—In an action to quiet plaintiff's title to land, alleged to be clouded by defendants giving out that the title is in themselves and not in plaintiff, an action of ejectment pending, in which the defendant does not ask for affirmative relief, is not available as a defense.

DEFENDANT NEED NOT LITIGATE NEW MATTER.—A defendant in ejectment is bound to bring forward all matter of a strictly defensive character, or be precluded from again litigating the same; but he is not bound to set up or litigate new matter constituting a cause of action in his favor.

POSSESSION OF LAND.—A person who enters into the actual possession of a portion of a tract of land, claiming the whole under a deed in which the entire tract is described by metes and bounds, is not limited in his possession to his actual inclosure, but acquires possession to all of the land not in the adverse possession of another person at the time of his entry.

PRIOR POSSESSOR OF LAND.—Where the title to land rests in possession only, the prior possessor has the better title.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

This action was brought to quiet plaintiff's title to a tract of land containing about ten acres, situated on what is known as the " Potrero Nuevo," in the City and County of San Francisco. The defendants, except the City and County of San Francisco, set up in their answers that before the commencement of this action, the defendants, Compton and Bensley, as plaintiffs, commenced an action of ejectment in said Court against the plaintiff, Ayres, and others, to recover possession of the same premises described in the complaint, in which action service was had upon said Ayres, and that he answered, alleging that he was the owner of the land, and that said action was then pending and undetermined. The plaintiff demurred to this part of the answer, and the Court sustained the demurrer.

On the 3d day of June, 1851, George Roberts and John Lange executed and delivered to John Crowell a deed of a tract of land lying on said " Potrero Nuevo," which included

within its boundaries the land in dispute.   Crowell pointed out to Roberts and Lange the boundaries of the tract conveyed, which were indicated by small ditches and stones placed at intervals along its eastern and western lines.   Roberts and Lange were not in the actual possession of any part of the land, nor had they ever made any improvements on the same. The deed described the boundaries.

On the 2d day of August, 1853, Crowell erected a small house on the land, moved into the house, and caused the western boundary to be more clearly marked by a ditch and pile of stones.   Crowell resided on the land until 1855.   During this time he sold and conveyed divers portions of it to different persons, who entered upon their respective purchases.   In April or May, 1854, R. B. Stratton erected a house on the ten acre tract in controversy, and on the 18th day of August of the same year the plaintiff Ayres moved into this house, where he was living when this action was tried in the Court below. Between the fall of 1854 and June, 1855, Ayres erected a substantial fence around the ten acre tract in dispute, which he had maintained up to the time of trial.   Whatever title Crowell had to this tract, Ayres had acquired.

In the fall of 1851, L. H. Wire made a brickyard between a quarter and a half mile westerly from the western boundary of the Crowell tract, and erected buildings thereon, which were used by him for boarding his hands, etc.   About five acres of land were connected with the brickyard, none of which lay within the boundaries of the Crowell tract.   In June, 1852, Wire sold to Hatch, who a few days thereafter sold to Farrington & Ludlum.   In August, 1852, Farrington, who was a citizen of the United States, located one hundred and sixty acres, under the Act of April 22d, 1852, entitled "An Act prescribing the mode of maintaining and defending possessory actions on public lands in this State."   This claim of Farrington included the brickyard premises and the Crowell tract, and at the time it was made no person was living on the same, except those connected with the brickyard, nor had any improvements been made on it, except such as were con-

nected with the brickyard, and the slight ditches on parts of the boundary line of the Crowell tract. November 4th, 1852, Farrington & Ludlum conveyed to Bellows and Webster an undivided half of the Farrington claim, and they entered into immediate possession. The title of Webster and Bellows, and Farrington & Ludlum, had vested in defendants Bensley and Compton by sundry mesne conveyances.

In August, 1853, Farrington, Webster, and others, constructed a fence, consisting of light posts with a rail fastened on the top of the posts, around the Farrington claim. This fence was soon torn down in places, and disappeared in the early part of 1854.

On the 20th day of December, 1853, Mason, Bensley, Webster, and others, who then owned the " Farrington claim " and were living on the same, commenced, and before February, 1854, had completed a substantial fence around the same. Some of the persons within this inclosure claimed under the "Crowell title," and some under the " Farrington title," and the fence was occasionally broken down in places, but had been kept up by the parties who built it as well as they could, owing to the contention of contending claimants, up to the time of trial.

The Court below gave judgment that the title of the defendants, Bensley, Compton, Dumarthery, and Mason, was invalid and void, and enjoined them from asserting any claim, right or title to the land. The bill was dismissed as to the City and County of San Francisco. The defendants against whom judgment was rendered appealed.

The other facts are stated in the opinion of the Court.

*J. McM. Shafter*, for Appellants.

The Court erred in sustaining the demurrer. The fact that the possession is in Ayres is alleged and admitted by both sides. The *title* and *consequent right of possession* are distinctly and solely put in issue in both actions in precisely equivalent terms. The *judgments* prayed are equivalent. In the eject-

ment Ayres prays to defeat Bensley and Compton's action, so that his possession, .based upon his title, shall be ratified by the judgment. In this action he prays that " he be quieted in the possession and enjoyment of said premises" by the judgment. His further prayer, as to declaring his title paramount to ours, etc., is only to have the *Court* affirmatively express what the law would declare the effect of the judgment, without such direct judicial explanation. A man who . should defend an action upon a promissory note (of which he had obtained possession) on the ground that it was a forgery, would probably be satisfied that after judgment in his favor upon that issue, that he was quite safe from another action, and would hardly suppose that it was necessary to commence a new suit to procure a decree in equity cancelling the note for the reason that it was spurious. The precise identity need not be made out. It is sufficient if the same object may be obtained in the first suit which is sought in the second. " It seems to me not necessary or proper to be going on with two suits *pari passu*, when one is capable of accomplishing the whole object." (Per V. Chan.) (*Dickinson* v. *Codwise*, 4 Ed. Ch. 341; *Estrada* v. *Murphy*, 19 Cal. 248; *Weber* v. *Marshall*, 19 Cal. 447; *Morris* v. *Rexford*, 18 N. Y. 552; *Swart* v. *Borst*, 17 How. Pr. 69; *Dobson* v. *Pearce*, 12 N. Y. 156; *N. Y. Cent. Ins. Co.* v. *National P. Ins. Co.*, 14 N. Y. 85; *Crary* v. *Goodman*, 12 N. Y. 2; *Winfield* v. *Bacon*, 24 Barb. 154; *Foote* v. *Sprague*, 12 How. Pr. 355; *Phillips* v. *Gorman*, 17 N. Y. 270.)

That Ayres *could* avail himself of his title in the action of ejectment, with which to defend his possession, and that if he desired he might have brought forward any equities he had, and demand any affirmative relief to which he deemed himself. entitled, is certainly undeniable; and that he ought to have so brought them forward, under penalty of sacrificing such right, we think is equally true. (2 Hill and Cowen's Notes, 4th ed., p. 21, note 262.) That Ayres *must have* availed himself of his title in the action of ejectment, or have sacrificed the right to do so, in an action like the present, is evident

from the further consideration, that if he withheld the defense and was put out under the judgment therein, *not being thereafter in possession*, he could no longer maintain this action. (Prac. Act, Sec. 254.)

Take the foregoing considerations in connection with the reasoning of this Court in *Caperton* v. *Schmidt*, 26 Cal. 469, there can be no doubt remaining that the ejectment pending is an entire defense to this action. If Farrington's claim under the Possessory Act is not good, Webster and Bellows had a common law possession when they bought in November, 1852. Their possession extended to the boundaries of the land described in their deed. This was prior to the entry of Crowell, under whom plaintiff claims. (*Hicks* v. *Coleman*, 25 Cal. 122 ; *Phelps* v. *Sawyer*, 2 Aik., Vt., 150 ; *Beach* v. *Sutton*, 5 Vt. 209 ; *Brown* v. *Edson et al.*, 22 Vt. 357 ; *Clarke* v. *Courtney*, 5 Pet. 320, 355 ; *Hickie* v. *Starke*, 1 Pet. 98.)

*M. Compton*, also for Appellants.

The District Court erred in sustaining the demurrer to the *second* and *fourth* defenses, contained in the answer of the defendant Compton. The question is, whether, when a Court of competent jurisdiction once acquires cognizance over a cause and the subject matter, it can be divested of that jurisdiction by another Court of concurrent jurisdiction? It is no answer to say that this is an equity action. Why not try the question of title or possession as well at law as in equity? We say, that the action of ejectment is a bar to this present suit. (*Caperton* v. *Schmidt*, 26 Cal. 469.) The question is who has the best title to the premises in question. The presumption of title is always on the side of the first possessor. (*Potter* v. *Knowles*, 5 Cal. 88.) And when neither party connects himself with Government, the title is considered in the first possessor. The possession must be actual and not constructive. (*Mott* v. *Smith*, 16 Cal. 533.) As to what is actual possession as distinguished from constructive possession, see *Minturn* v. *Barr*, 16 Cal. 109 ; *Mott* v. *Smith*, 16

Cal. 533; *Lawrence* v. *Fulton*, 19 Cal. 653; *Havens* v. *Dale*, 18 Cal. 359; *Hallon* v. *Schumaker*, 21 Cal. 453 : *Humphreys* v. *McCall*, 3 Cal. 64; *Gird* v. *Ray*, 17 Cal. 352. John Crowell had no such possession prior to his going on the land, August 3d, 1853, as gave him a right to the land as against Farrington, claiming under the pre-emption laws. The going on waste and uninclosed land by Roberts and Lange, and marking out boundaries by ditches without even occupying it or inclosing it, and Crowell's subsequently building a house and occupying it, gave neither Roberts and Lange, or Crowell, any claim or possession as against Farrington and his grantees, so as to prevent them from taking possession and inclosing it with a view of claiming it under the pre-emption laws. (*Mott* v. *Smith*, 16 Cal. 533.) Whatever might have been the intentions of Roberts and Lange at the time of their survey, their rights were lost by not inclosing or residing upon the land. (*Gird* v. *Ray*, 17 Cal. 352.)

*J. B. Crockett*, for Respondent.

In ejectment the plaintiff may recover upon his title to either an absolute or qualified estate, which entitles him to the possession, or upon prior possession alone against a mere intruder. The defendant may defeat the action if the plaintiff claims under a paper title, by showing a better title in himself or a stranger; or, if the title be founded on possession alone, by showing a prior possession. The action *may* try the title, or it may involve only the present right of possession. In either case, the complaint under our system contains substantially the same allegations, to-wit: that the plaintiff is entitled to the possession, and that the defendant wrongfully withholds it from him. The answer may either simply deny the plaintiff's right to the possession, or it may aver that the defendant has the better title or the superior right to the possession. It is not necessary or proper for either plaintiff or defendant to deraign his title in the pleadings. At common law, the best *legal* title prevailed in the action, and equitable

79

titles were not considered. But under our system, though
the plaintiff has the legal title, the defendant may defeat the
action, if he can show the better equity. If, however, he
relies on an equitable defense, he must set it up specifically in
his answer, and this is tried by the *Court*. But though he has
a valid equitable defense, and *may* set it up in his answer, he'
is not bound to do so. If he omits to do it, and the plaintiff
prevails in the ejectment, the defendant is not precluded from
asserting his equity in a seperate action. This is not only
reasonable, but is plainly the law as expounded by this Court.
(*Aguello* v. *Edinger*, 10 Cal. 157; *Weber* v. *Marshall*, 19 Cal.
457; *Blum* v. *Robertson*, 24 Cal. 141.) The point is expressly
ruled in *Lorraine* v. *Long*, 6 Cal. 452. From this brief out-
line of the action of ejectment as it exists under our system,
it is obvious that it has wholly different functions from those
which pertain to an action to quiet title. In the former, the
*title* is not necessarily involved. In the latter the title only is
in issue. One is a common law action to be tried by a jury, and
the other is an equitable action to be tried by the Court. In
the one, the judgment is for a restitution of the possession
only; and in the other, the judgment for the plaintiff is that
he has the better *title*, and the defendant is enjoined from
asserting title in the future. In ejectment, unless the defend-
ant sets up in his answer an *equitable* title, he can demand no
affirmative relief. If the judgment be in his favor, he will
have nothing of record to show that his *title* has been adjudged
to be superior to the plaintiff's. On the other hand, in an
action to quiet title, the ends to be accomplished, are not only
to have a direct adjudication on the title, but to place the
decree of record in an enduring form, so as to remove all cloud
from the title. The demurrer was properly sustained for
another reason.

The action, the pendency of which was pleaded, was not
between the same parties. Farrington and Ludlum, when
they first entered, claimed only the *brickyard*, under their pur-
chase from Wire. *They never had a conveyance from any one
for any other portion of the one hundred and sixty acres.* In

the spring of 1853 they built the house near the centre of the
tract; but there was no inclosure around it, nor upon any
part of the tract, except, perhaps, a few acres about the
brickyard.  These acts constituted no possession of any part
of the tract, except the brickyard and the ground covered by
the house.  The next act was the building of the skeleton
fence in August, 1853.  This constituted no possession of any
portion of the one hundred and sixty acres, because the fence
was not of a character to turn cattle, or establish their domin-
ion over the land, and particularly over the premises in con-
troversy; because before the fence was built Crowell had
entered under the deed from Roberts and Lange, and had
erected his house, and was actually residing on the land,
claiming title to the boundaries specified in his deed.  Nor
did the fence of 1854 establish the possession in the defend-
ants as against Crowell and his vendees, or indeed, as against
any one; because this fence included Crowell and others who
were then in the actual adverse possession.  If we lay aside
entirely the deed from Roberts and Lange to Crowell, the find-
ings of the referee establish that in 1851 Wire was in possess-
ion of the *brickyard* only; that Farrington and Ludlum suc-
ceeded to this possession; that in 1852, Farrington, for the
joint benefit of himself, Ludlum, and Bellows, caused a survey
to be made of one hundred and sixty acres, including the
brickyard, placed a few small stakes at long intervals to indi-
cate the boundaries, and made a futile effort to take up the
land under the Possessory Act of 1852; that early in 1853
they erected a house about the centre of the tract; that whilst
things were in this condition Crowell entered on the extreme
eastern end of the tract, remote from the brickyard and from
the house of Farrington, and erected his shanty, claiming to
be the owner of all that portion of the tract included within
certain ditches, stakes and piles of stones; that he sold and
conveyed a portion of his claim to Brewster, who also entered;
after which, without their consent, Bensley and Mason, the
successors to Ludlum and Farrington, erected a substantial
fence, including the entire one hundred and sixty acres.

These being the facts, I inquire what *right* had Bensley and Mason to the land claimed by Crowell, and on which he resided, and by what authority did they assume to include Crowell in their inclosure ?

By the Court, SANDERSON, J.:

The demurrers to the defendants' answers, so far as they allege the pendency of another action between the same parties for the same cause, were properly sustained. In order to render that defense available, it must appear that the causes of action and the parties (the plaintiffs at least) are the same in both actions; neither of which, in our judgment, can be affirmed of the present case, and of this a bare statement of the facts upon which the question is presented, would seem to be conclusive. This action is brought by Ayres alone against Bensley, Dumarthery, Compton, Mason, and the City and County of San Francisco, under the two hundred and fifty-fourth section of the Practice Act, to quiet title to a certain tract of land described in the complaint, of which the plaintiff alleges himself to be in possession. The wrong and injury of which the plaintiff complains, is that the defendants have falsely pretended and given out in speeches that he (the plaintiff) has no valid title thereto, and that the legal title is in themselves and that they are entitled to the possession thereof, and that thereby they have cast a cloud upon his title and caused many persons to believe it to be worthless, and thereby greatly impaired its market value. The relief which he seeks is a decree adjudging his title to be superior and paramount to the pretended titles of the defendants, and that he may be quieted in the possession of said land and the defendants enjoined from asserting any title to the same hereafter.

The action pleaded in abatement is an action of ejectment brought by the defendants Bensley and Compton against the plaintiff Ayres, and divers other persons not named, for the possession of the land in question. The wrong complained of

is that Ayres and his co-defendants " unlawfully and wrong-
fully, with force and arms, entered into and upon said prem-
ises, and ousted and ejected the plaintiffs therefrom." The
relief asked is a judgment awarding to the plaintiffs the pos-
session of the land. In his answer, Ayres denied the aver-
ments of the complaint, and alleged title in himself, but asked
no affirmative relief.

That these causes of action are essentially different would
seem to be obvious upon bare inspection. The wrongs com-
plained of and the redress sought are in no respect alike. The
*gravamen* of the latter is a wrongful entry and ouster; that of
the former is a slander of plaintiffs' title. Testimony in sup-
port of one would not support the other, except so far as title
might become the subject of inquiry in the ejectment suit
which might or might not occur. Moreover, the objects of
the two actions are entirely different, notwithstanding the
main point in dispute may be the same; one attainable in a
Court of law and the other in a Court of equity.

These obvious distinctions between the two cases do not
seem to be denied by counsel for appellants; but it is claimed
that Ayres could have obtained in the first suit all that he
seeks in this, under our system of practice, and that he ought
therefore to have brought forward in his answer in that case
the matters contained in his complaint in this, under penalty
of sacrificing all his rights in the premises. Conceding that he
might have adopted that course, yet he did not, and we know
of no rule of law making it obligatory. Doubtless he was
bound to bring forward all matters of a strictly defensive
character which then existed in his favor, or be thereafter pre-
cluded; but this cannot be affirmed of other matters consti-
tuting a cause of action in his favor. Although under our
system a defendant may set out new matter in his answer con-
stituting a counterclaim, and may have any affirmative relief
to which he may be entitled, (Prac. Act, Secs. 46 and 199,) it
does not follow therefrom that he is compelled to do so. Such
a rule might become most mischievous in its results, for he
might be wholly unprepared to make out his case for the

want of testimony which at another time might be at his command. But it is a sufficient answer to this point to say that although the statute provides that a defendant may set out a cause of action in his favor and obtain affirmative relief, it nowhere provides that he shall do it, under penalty of a forfeiture of his claim, and he may therefore do it or not at his option.

But if this objection could be overcome, a conclusive reply to the defense in question is found in the fact that the parties are not only not the same, but they do not, so far as they are the same, stand in the same relation to each other. The plaintiff in this suit is a defendant in the other, and *vice versa.* The foundation upon which the defense in question rests is the abhorrence which the law entertains for a multiplicity of actions. The law does not permit a party to prosecute two actions for the same cause at the same time, because the second suit is not only unnecessary, so far as the enforcement of his rights are concerned, but annoys and harasses the defendant without cause. (Bacon's Abridgement—Abatement —note *m.*) The reason of this rule, however, can have no application except where the plaintiff in both actions is the same person, hence the rule itself can have no application where such is not the case. The defense of a prior *lis pendens* applies exclusively to the case where the plaintiff in both suits is the same person and both are commenced by himself, and not to cases where there are cross suits by a plaintiff in one suit who is defendant in the other (*Certain Logs of Mahogany,* 2 Sumner's Reps. 593 ; *Wadleigh* v. *Veazie,* 3 Sumner's Reps. 165 ; *O'Connor* v. *Blake,* 29 Cal. 312,) which is an obvious deduction from the reason upon which such a defense is founded. Where there are merely cross suits between parties, it cannot, in any just sense, be said that either is prosecuting two actions against the other within the rule in question.

Under the view which we take of this case upon the merits, there are certain points which have been elaborately argued, by counsel upon both sides, which we deem it unne-

cessary to discuss.   Upon the points made against the deed of the 3d of June, 1851, from Roberts and Lange to Crowell, we shall express no opinion ; nor shall we express any opinion as to the possessory right or title of the defendants, so far as it may depend upon the steps taken by Farrington, in August, 1852, to secure a possessory right to what is called the "Farrington Claim," under the provisions of the Act of the Legislature of the 22d of April, 1852, entitled " An Act prescribing the mode of maintaining and defending possessory actions on public lands in this State;" nor so far as they may depend upon the erection of the "skeleton fence," in August, 1853, or the "substantial fence," erected in January, 1854.   But for the purposes of our decision we shall assume that the deed from Roberts and Lange to Crowell embraced the land in controversy, and that the defendants acquired no rights under the statute in question, or the "skeleton fence" of 1853, or the "substantial fence" of 1854.   Of this summary mode of disposing of all these questions the plaintiff (against whose title we decide) cannot complain, for upon all of them we assume his position as the correct one.

Thus stripped, the case is reduced to a simple question of prior possession at common law, under color of title, where there is no inclosure ; and the law of that question was elaborately considered in the case of *Hicks* v. *Coleman,* 25 Cal. 122, and we do not propose to go over the ground again.   In that case we held that a party who enters into the actual possession of a portion of a tract of land, claiming the whole, under a deed in which the entire tract is described by metes and bounds, is not limited in his possession to his actual inclosure, but acquires possession to the entire tract, if it was not in the adverse possession of any other person at the time of his entry; and that such person, in an action to recover possession of the land, will prevail against one who enters subsequently upon the uninclosed part, showing color of title only.   All we have to do is to apply the principles of that case to the facts of this.

It apears from the finding that Crowell was the first person,

under whom the plaintiff claims, in the actual possession of any part of the land. He entered on or about the 2d day of August, 1853, under ʿa deed from Roberts and Lange, with specific boundaries, including the land in question. The 2d day of August, 1853, then, is to be taken as the date from which the plaintiff's possession commenced.

On the 4th day of November, 1852, no one being in the adverse possession of the land in controversy, Bellows and Webster entered into the possession of what is called the "Farrington Claim," which also includes the land in controversy, under a deed to an undivided half thereof from Farrington and Ludlum, and a lease to the other half from the same parties, and they or their grantees, terminating in the defendants, have been in possession, except when they have been interrupted, until the present time. The 4th day of November, 1852, then, is to be taken as the date at which the defendants' possession commenced. Thus it appears that the prior possession is in the defendants, and hence, under the rule in *Hicks* v. *Coleman*, their title is superior to that of the plaintiff and must prevail.

Upon the facts as found, the conclusions of law should have been in favor of the defendants. The judgment, therefore, is reversed, and the Court below directed to enter a judgment in their favor.

Mr. Chief Justice CURREY did not express any opinion.

Mr. Justice SHAFTER, having been of counsel, did not participate in the decision.