[Civ. No. 6479. Third Dist.—April 5, 1941.]

LLOYD HAMM, Respondent, v. SAN JOAQUIN & KINGS RIVER CANAL COMPANY, INC. (a Corporation) et al., Appellants.

[Civ. No. 6480. Third Dist.—April 5, 1941.]

ALWIN FITTJE, Appellant, v. J. L. HAMM et al., Respondents.

C. Ray Robinson, W. Eugene Craven, Willard B. Treadwell and Cooley, Crowley & Supple for Appellants.

F. M. Ostrander, L. M. Linneman and Hugh H. Griswold for Respondents.

THOMPSON, J.—A collision occurred at the intersection of two highways in Merced County, between three automobiles operated respectively by Messrs. Hamm, Fittje and Yoest. Cross suits, based on that accident, were filed by two of the participants in the same court. For the purpose of identity we shall refer to the actions as the Hamm case and the Fittje suit. A summons was first served in the Fittje suit, which was last instituted. Mr. Fittje moved the court to dismiss the Hamm complaint for lack of jurisdiction. That motion was finally denied. The cases were consolidated and tried together with the aid of a jury. A verdict of $20,000 was returned in favor of the plaintiff in the Hamm case. A separate verdict was returned against the plaintiff in the Fittje suit. Judgments were rendered in accordance with the verdicts. From those judgments the appeals were perfected.

The accident which is involved in these appeals occurred one mile north of Dos Palos in Merced County, in broad daylight, at an intersection of Cornelia Avenue with Highway Number 33. The state highway extends north and south, at the point where the casualty occurred. It is paved with concrete sixteen feet in width. A white line is painted along the center of the paved portion. The highway is sixty feet in width between the property lines. Cornelia Avenue crosses the highway at a right angle, upon substantially level ground. It has an oiled surface sixteen feet in width. Its right of way is also sixty feet in width between property lines. A man by the name of Thompson owns the premises at the northeast corner of the intersection of the roads in question. Upon that property there is a dwelling house and outbuildings. Along the southerly line, adjacent to Cornelia Avenue, there are several trees which, to some extent, obstruct the view to the north, of one traveling along that avenue. Southeast of the intersection there is an open grain field adjacent to the roadways, affording motorists on either highway a clear and unobstructed view across that corner, except that there was then deposited along the easterly border of the state highway a pile of gravel to be used for surfacing the roadway, three and a half feet in height and 150 feet in length, beginning at a point thirty feet south of the intersection. There was a heavy growth of weeds along the top of this pile of gravel. There is evidence this gravel obstructed the view of highway motorists toward the east. In traveling along the state highway one has a clear view either north or south of the intersection for a distance of a mile or more.

The accident occurred at 5:30 P. M. of June 10, 1938. Both Mr. Fittje and Mr. Yoest were employed by the Canal Company. They were engaged in that employment just prior to the accident. Mr. Fittje was driving his Chevrolet car northerly along the state highway at a speed of forty-five miles an hour. Mr. Hamm was driving his Ford "pick-up" machine southerly along the same highway at a speed of about thirty-five miles an hour. Mr. Yoest was operating his Chevrolet automobile westerly along Cornelia Avenue at a speed of thirty or forty miles an hour. There was then no other traffic in that vicinity. As Mr. Hamm approached the intersection he observed the Fittje car 150 or 200 feet south of the

crossing, coming toward him on the proper side of the highway. He claimed 'to have looked but failed to see the Yoest machine approaching from the east on Cornelia Avenue. It will be recalled there are buildings and trees on the Thompson premises at the northeast corner of the intersection which may have obstructed his view to some extent. Yoest testified that he looked to the south as he approached the highway and saw no machine; that he reduced the speed of his car and stopped a few feet from the easterly line of the highway; that he saw Mr. Hamm 400 feet north of the intersection, driving south on the highway. Mr. Yoest said that, after he stopped his machine, he again looked south and saw no approaching vehicle. Mr. Campbell, a constable, who lives in that vicinity, testified that he experimented with the use of an automobile parked on Cornelia Avenue eight feet east of the eastern line of the state highway, and that, from his position seated in the car, he was able to see a distance of 250 feet south along the highway, but beyond that point his vision of the highway was obstructed by the pile of gravel and the weeds which grew along its top. That evidence was corroborated by another witness. It is obvious that the farther east from the state highway Mr. Yoest's machine was parked, the more limited would be his view of the roadway. After stopping and observing no car approaching from the south, Mr. Yoest resumed his course, traveling at the rate of about ten miles an hour. His machine was struck by the automobile of Mr. Fittje, before he reached the center line of the highway.

Mr. Fittje testified that he was driving north along the highway at a speed of forty-five miles an hour; that he plainly saw the Hamm machine approaching from the north on its proper side of the highway; that he also observed the Yoest car traveling westerly along Cornelia Avenue at a speed of about fifty miles an hour; that he never lost sight of the Yoest machine until the first collision occurred; he saw the Yoest car reduce its speed and stop at the intersection; he said he thought Mr. Yoest would not attempt to cross the highway ahead of his machine. Mr. Fittje claims he retarded the speed of his vehicle, but admits that he did not apply his brakes nor sound his horn to give warning of his presence. It is reasonable to assume he was traveling very rapidly. He saw the Yoest car continuously and observed the driver's conduct. As Yoest started his machine to re-

sume his journey, Fittje should have observed and appreciated the danger of the emergency, yet he failed to apply his brakes or sound his horn. A collision of the Yoest and Fittje machines occurred in the northeast portion of the intersection. There is a conflict as to whether Yoest's car struck the Fittje machine or *vice versa*. It seems immaterial what the fact may be in that regard. If Fittje was guilty of negligence which contributed to the second collision and Hamm was free from contributory negligence, it would not matter whether Yoest was also guilty of concurrent negligence. Fittje would still be liable for damages. The Fittje car was diverted by the first collision to the western side of the highway and ran directly in the course of the Hamm car. The second collision occurred on the west side of the highway, at a point about forty feet northerly from the north line of Cornelia Avenue. Both the last-mentioned machines were badly demolished. The Fittje car landed at the extreme western edge of the state highway. As a result of the impact both Mr. Fittje and Mr. Hamm were rendered unconscious.

It seems quite evident that Mr. Hamm was guilty of no contributory negligence. He was operating his machine under full control, on his proper side of the highway, at a reasonable and moderate rate of speed. He could not have reasonably anticipated the collision between the Fittje and Yoest machines, nor could he have reasonably expected the Fittje car to have been suddenly catapulted across the highway into the course of his own automobile. Mr. Hamm was seriously and permanently injured. The jury returned a verdict of $20,000 for plaintiff in the Hamm case. A separate verdict was returned against plaintiff in the Fittje case. Judgments were rendered in accordance with those verdicts. It is not contended the amount of the verdict in Mr. Hamm's favor is excessive.

The appellants assert the verdicts and judgments are not supported by the evidence; that the court was without jurisdiction to try the Hamm case; that the court erred in giving to the jury and in refusing to give certain instructions, and that the attorney for Mr. Hamm was guilty of prejudicial misconduct in wrongfully informing the jury that his client did not carry liability insurance on his automobile.

We are of the opinion the judgments in both cases are adequately supported by the evidence. There is a con-

flict of evidence on many important issues, but there is substantial proof to support the judgments. We have not attempted to recite the evidence. We have merely told the story supported by the record, which is favorable to the theory upon which the judgments are evidently founded. The effect of the verdict and judgment in the Fittje case is to relieve both Mr. Hamm and Mr. Yoest from the charge of negligence. There may be some reason to doubt Mr. Yoest's freedom from negligence, but there is substantially no evidence that Mr. Hamm performed or refrained from doing anything in propelling or managing his machine prior to the accident, which a reasonably prudent person would have done or omitted to perform under the same circumstances. Likewise, the great weight of evidence in the Hamm case indicates that the plaintiff was free from contributory negligence, and that Fittje's negligence, which caused the first collision, also resulted in the subsequent collision with the automobile of Mr. Hamm. Assuming that Fittje was guilty of negligence which caused the first collision, and that Hamm was free from contributory negligence, it is immaterial that Yoest may have also been guilty of concurrent negligence which contributed to the second collision. Under such circumstances, Fittje would still be liable for damages incident thereto.

The appellants contend that the judgment for plaintiff Hamm is void for the reason that the court lacked jurisdiction to try his cause since the court first acquired jurisdiction of the parties in the Fittje case on account of prior service of summons therein. There is no merit in that contention. Separate cross suits for damages growing out of the same automobile casualty were filed in the same court by the appellants and the respondent, Mr. Hamm. The court acquired jurisdiction in both cases. The actions were consolidated for trial. The appellants were deprived of no opportunity to present every issue upon which they rely in both cases. Every material issue relied upon was tried and determined.

For the purpose of considering this question of alleged lack of jurisdiction, in order to identify the actions, we shall refer to them by naming the plaintiffs in each separate case as the Hamm case or the Fittje case. The facts upon which the jurisdiction of the court in the Hamm case is challenged are

as follows: June 29, 1938, Mr. Hamm filed his suit in Merced County against the appellants, but failed to serve summons therein until October 28, 1938. October 4, 1938, Fittje filed his suit against Hamm, Maron and Yoest, in the same county, serving his summons on the defendants therein prior to October 12th. February 17, 1939, Hamm and Maron filed an answer to the Fittje complaint, but, assuming their original complaint presented all necessary affirmative demands, they did not then file a cross-complaint in the Fittje action. By leave of court subsequently obtained, Hamm filed a cross-complaint to the Fittje pleading May 11, 1939. That cross-complaint was answered by Fittje May 19, 1939. February 23, 1939, the appellants filed their answer and cross-complaint in the Hamm case. Hamm answered that cross-complaint March 6th of the same year.

On motion of appellants the court dismissed the Hamm case May 15, 1939, on the theory that, having first acquired jurisdiction in the Fittje case, under section 416 of the Code of Civil Procedure, because the summons was first served in that case, the court therefore lacked jurisdiction in the Hamm case. Upon due notice and motion by the respondent, the order dismissing the Hamm case was set aside, and it was reinstated. Both cases were thereupon consolidated for trial. At the trial of February 7, 1940, appellants renewed their motion to dismiss the Hamm case for lack of jurisdiction. That motion was denied. As a result of a controversy over the effect of the issues presented by the two consolidated cases and the cross-complaints therein, the court struck from the record the cross-complaints in both cases, and directed that the causes be tried together upon the two complaints and the answers thereto. The court favored the appellants by granting them the opening and closing of the arguments. The causes were tried by a jury which returned a verdict in the Hamm case against the defendants. A separate verdict was also returned in the Fittje case in favor of Mr. Hamm. Judgment was rendered in accordance with the verdicts.

In support of their contention that the judgment for the respondent Hamm is void for lack of jurisdiction the appellants rely on section 416 of the Code of Civil Procedure, which provides in part:

"From the time of the service of the summons and of a copy of the complaint in a civil action, . . . the court is

deemed to have acquired jurisdiction of the parties, and to have control of all the subsequent proceedings.''

There is nothing in the language of that section in conflict with the theory that the Merced Superior Court did not also acquire jurisdiction of the same parties, and retain control of all the subsequent proceedings in both cross suits involving the same automobile casualty, which were instituted and consolidated for trial in that same court. There was no conflict of jurisdiction between different courts. The same jury and judge tried and determined all issues of both cases at the same time. It is true that the court is deemed to acquire jurisdiction of the parties *at the time* of the service of the summons and complaint. That does not mean the same court may not subsequently acquire jurisdiction of the same parties in a cross suit involving the identical issues so as to consolidate the cases and determine the issues at one time. 
The court might have properly left in the record the cross-complaints, but neither party was prejudiced by striking them from the record since all issues of both consolidated cases were presented and determined on the respective complaints and answers. At most, the ruling of the court resulted in nothing more than an error in either pleading or procedure. (*Peak* v. *Key System Transit Co.*, 88 Cal. App. 354 [263 Pac. 578].) Under article VI, section 4½ of the Constitution that does not constitute reversible error.

The case of *Gorman* v. *Superior Court*, 23 Cal. App. (2d) 173 [72 Pac. (2d) 774], upon which appellants rely, is not in conflict with what we have previously said regarding the alleged lack of jurisdiction. That case arose over a conflict of jurisdiction between the courts of two different counties in each of which counties suits between the identical parties involving the same automobile casualty were filed. One suit was commenced in Merced County and the other was instituted in Fresno County. It was there properly held in accordance with section 416 of the Code of Civil Procedure that the court from which the summons and complaint were first served was entitled to retain and control all subsequent proceedings in the litigation. The reason assigned for that ruling was that ''this will work no injustice to them while to permit them to proceed in an independent action [in another county] will lead to unnecessary duplication and confusion, with resulting injustice to some of the parties.'' That situation does

not exist in the present case where both actions are pending in the same court, and they are consolidated for trial and the court retains, not only the jurisdiction, but the control of all proceedings in both cases. The last-mentioned procedure is not in violation of section 416 of the Code of Civil Procedure.

■ This case really presents a question of the application of the doctrine of abatement. Was the Hamm case abated merely because one of the defendants in that cause subsequently filed in the same court a complaint involving the same cause, and served his summons first? We think not. Abatement of an action will occur under section 430 of the Code of Civil Procedure only when there is another action pending between the same parties for the same cause. It is recognized to prevent a multiplicity of suits and unnecessary vexatious litigation. (*Lindsay* v. *Stewart,* 72 Cal. 540 [14 Pac. 516]; 1 Cal. Jur. 23, sec. 4.) It has been held that abatement will not lie unless the suits are founded on the same issues and the plaintiffs are the same in both actions. (*Ayres* v. *Bensley,* 32 Cal. 620, 630; *Coubrough* v. *Adams,* 70 Cal. 374 [11 Pac. 634]; 1 Cal. Jur. 32, sec. 12.) Abatement does not lie with respect to cross suits pending in the same court where the relationship of the parties to the suits is reversed. In 1 Corpus Juris, page 82, section 107, it is said in that regard:

"The general rule is to the effect that the plea of a prior action pending applies only where plaintiff in both suits is the same person, and both are commenced by himself, and not to cases in which there are cross suits by a plaintiff in one suit who is defendant in the other."

■ Neither prejudice to the appellants nor reversible error occurred in trying the consolidated actions together as the court did in the present cases.

■ The appellants contend that misconduct and reversible error occurred when the attorneys for respondents Hamm and Yoest elicited evidence at the trial that neither of them carried liability insurance on their respective automobiles, which left the inference that there was insurance on the car which was operated by the appellant Fittje.

It appears that both Yoest and Fittje were employed by the San Joaquin and Kings River Canal and Irrigation Company. Each of them owned the machine which he drove at

the time of the accident. Upon examination of the prospective jurors on their *voir dire* they were properly asked if they owned stock in any insurance company. During the trial of the case Mr. Yoest was asked, and answered the question without objection, that he carried no insurance on his automobile. The alleged prejudicial misconduct occurred later when Mr. Hamm was being examined by his attorney, as follows:

''Q. You were the owner of that car, I believe, were you not? A. I was, yes, sir. Q. And you carried no public liability insurance on it? A. I didn't have—

''Mr. Robinson: Just a second, object to that question as incompetent, irrelevant and immaterial and assign the asking of it as misconduct and ask for a mistrial at this time.

''The Court: Well, the objection will be sustained.

''Mr. Ostrander: If your Honor please, there were certain questions asked by Mr. Robinson of this jury which left the inference that there was some insurance either on the part of Mr. Hamm or Mr. Maron and we expect to rebut that inference by asking them both and showing there was none.

''The Court: Neither one of you will be permitted to show they had insurance or did not have; so far as this jury is concerned, there is no insurance in this case, no insurance company is a party to this case. It is simply to settle the question between the individuals.

''Mr. Robinson: I want to assign the remarks of counsel as misconduct, your Honor, and ask at this time for a mistrial upon that ground.

''The Court: The declaration for a mistrial will be denied.''

We think the challenged question was improper and that it should not have been asked. It will be observed the witness did not complete his answer. We believe the asking of the question did not constitute reversible error under the circumstances of this case, chiefly because it appears from the record there was no miscarriage of justice in finding that Mr. Hamm, from whom this objectionable question was asked, was free from negligence and that a judgment for damages against him was properly refused. The present case presents the reverse of the usual situation with relation to the question of wrongfully eliciting evidence of insurance carried by a defendant who is charged with negligently operating his automobile. Generally the error which is criticised in numer-

ous authorities occurred in proving that the defendants carried insurance on their machines on the theory that the jury might therefore wrongfully find verdicts against them because the judgments would ultimately be paid by insurance companies which were not parties to the actions. It is true that Mr. Hamm was also a defendant in one of these consolidated cases being tried. Ordinarily, the evil would be equally harmful, where both parties to such litigation appear as defendants in opposing suits regarding the same automobile casualty, to prove that one of the defendants did not carry insurance, if it also appeared that the other defendant was insured. It is true that Mr. Fittje was not asked if he carried insurance. It is asserted that proof of the fact that neither Hamm nor Yoest carried insurance left the clear inference that Mr. Fittje did carry insurance. We believe the challenged question was improperly asked, and the statement of counsel for Mr. Hamm was made without justification. Nevertheless, the court sustained the objection to the question and clearly stated in the presence of the jury that neither party would be permitted to prove that he did or did not carry insurance. The court further said "there is no [question of] insurance in this case". The jurors must have known from that statement that it was improper for them to consider the question of insurance. We may not presume they would deliberately disregard that declaration. But, acknowledging the error of asking that improper question, and conceding that the jury would thereby obtain the information that Mr. Hamm was not insured, we are of the opinion the incident does not constitute reversible error for the reason that there was not a miscarriage of justice in the rendering of judgment in this case. (Art. VI, sec. 4½, Constitution of California.)

█ █ We are of the opinion the jury was fully and fairly instructed upon every issue which was involved in the trial, and that no prejudicial error occurred in giving to the jury or refusing to give instructions. The appellants complain chiefly of an instruction given at the request of Mr. Hamm, which is couched in the language of paragraph four of section 511 of the Vehicle Code, as it then existed. It merely asserted that it constitutes *prima facie* evidence of negligence to propel a vehicle on a public highway at a speed in excess of fifteen miles an hour *"when traversing any intersection*

of highways", if obstructions exist within one hundred feet of the crossing, which prevents a clear view of the traffic on the intersected highway. The term *"prima facie* evidence" was not defined. The appellants may not complain of the omission to specifically define the term *"prima facie* evidence" for the reason that they offered no such instruction to the court. The preceding instruction was applicable to the facts of these cases and it was therefore properly given to the jury. It appears without conflict that Mr. Yoest stopped his machine before he entered the highway from Cornelia Avenue, as required by sections 552 and 577 of the Vehicle Code. The jury was properly instructed with respect to the last-mentioned sections. There is substantial evidence that the gravel pile, which extended southerly from the intersection a distance of 150 feet along the easterly border of the state highway, obstructed the view of Yoest's approach on Cornelia Avenue for more than 100 feet and that Mr. Fittje entered the intersection at a speed far in excess of fifteen miles an hour, without applying his brakes or sounding his horn. It is true that he testified his view of Mr. Yoest's automobile was never obstructed. But other witnesses testified that his view of an automobile approaching on Cornelia Avenue would be effectively obstructed. That issue presented a question of fact for the determination of the jury. We are bound by the implied finding of the jury in that regard. All of the necessary elements which rendered section 511 of the Vehicle Code applicable in these cases were sufficiently established by substantial proof. The challenged instruction might have been more explicit in applying the principle of *prima facie* evidence, but we are convinced the jury could not have been misled thereby.

In the case of *Gritsch* v. *Pickwick Stages System,* 131 Cal. App. 774 [22 Pac. (2d) 554], upon which the appellants rely, it does not appear that the approach to the intersection where the accident occurred was obstructed so as to conceal the view. Moreover, that case appears to have been reversed on account of the giving of a similar instruction, because the person involved in the accident failed to stop at the boulevard before entering the intersection. The court says in that regard:

"The evidence introduced by plaintiffs, as well as that offered by defendant, showed that Hamilton failed to stop before entering the boulevard, that he entered the intersec-

tion while driving at a speed of thirty miles an hour and crashed into the side of the stage.''

The Gritsch case, therefore, is readily distinguishable from the cases at bar.

■ The appellants assign the refusal to give a proffered instruction based on section 513 of the Vehicle Code as prejudicial. That section provides that the excess speed in traversing a ''blind'' intersection, beyond the *prima facie* rate of fifteen miles an hour, ''shall not establish negligence *as a matter of law* but in all such actions it shall be necessary to establish as a fact that the operation of a vehicle at such excess speed constituted negligence''. That proffered instruction is a correct declaration of the law, and might well have been given to the jury. But we think the refusal to give that instruction does not constitute reversible error, under the circumstances of this case. The jury was clearly instructed that the burden was on Mr. Hamm to prove that his injuries were sustained as the proximate result of the negligence of Mr. Fittje, and that Hamm could not recover if it appeared that either his conduct or that of Mr. Yoest contributed to the accident in the slightest degree. The terms ''negligence'', ''contributory negligence'' and ''proximate cause of injury'' were fully defined.

■ Finally, the appellants assign as prejudicial error the giving of an instruction to the effect that it is unlawful to operate a motor vehicle on a public highway at a speed in excess of thirty miles an hour, unless it is equipped with brakes by means of which it may be stopped within a distance of 83.3 feet. It is contended by the appellants this instruction is not applicable to the issues of these cases for the reason that there is no evidence that the brakes of Mr. Fittje's machine were defective, and because it was not contended at the trial that they were defective. That claim is true. There is absolutely no evidence that the brakes of his car were defective. Mr. Fittje admitted that he did not apply his brakes or attempt to stop his car before the collisions occurred. It must be conceded the last-mentioned instruction was inapplicable, but we are unable to see how it could have been prejudicial, or that the absence of that instruction would have warranted the jury in returning a different verdict. It is a well-established rule that the giving

of an instruction upon a question regarding which there is no evidence in the record will not justify a reversal of the judgment, even though the instruction is inapplicable, unless it appears that it was likely to mislead the jury or prejudice the appellant. (*Mehollin* v. *Ysuchiyama*, 11 Cal. (2d) 53, 57 [77 Pac. (2d) 855]; *Estate of Clark*, 180 Cal. 395, 398 [181 Pac. 639]; 2 Cal. Jur. 1027, sec. 611.)

We are persuaded there was no miscarriage of justice in the present case.

The judgments are affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition for a rehearing was denied May 5, 1941, and appellants' petition for a hearing by the Supreme Court was denied May 29, 1941.