[Civ. No. 7926. Third Dist. Aug. 13, 1951.]

ELMER LINDSTROM, Appellant, v. V. H. McREYNOLDS, Respondent.

Remington Low, C. Ray Robinson, R. A. McCormick and H. F. Hawkins for Appellant.

Vernon F. Gant for Respondent.

ADAMS, P. J.—Plaintiff Lindstrom brought this action against defendant McReynolds, alleging that due to negligence on the part of the latter in the operation of an automobile which he was driving, McReynolds' car collided with the vehicle driven by plaintiff, with resulting injuries to plaintiff for which he sought damages. McReynolds, in answer to plaintiff's complaint, denied negligence on his own part, alleged contributory negligence on plaintiff's part, and in a cross-complaint sought recovery from plaintiff for damages to defendant's automobile.

The jury which heard the evidence returned a verdict in favor of defendant on plaintiff's complaint and in favor of plaintiff on defendant's cross-complaint and denied recovery to either of the parties. From the judgment which followed plaintiff Lindstrom has prosecuted this appeal, the only error relied upon being the giving of an instruction which he claims misled the jury and resulted in a miscarriage of justice.

That instruction is as follows:

"If you find that as the plaintiff traversed the intersection of Sylvan Avenue and Coffee Road he did not during the last one hundred feet of his approach to such intersection have a clear and unobstructed view of such intersection and of any traffic upon all of the highways entering such intersection for a distance of one hundred feet along all of such highways, and if you further find that plaintiff approached and entered said intersection while driving his vehicle at a speed in excess of fifteen miles per hour, then I instruct you that such facts are sufficient to constitute prima facie evidence of negligence."

It is based upon section 511(a)(4) of the Vehicle Code, which provides that 15 miles per hour is the limit of speed of a motor vehicle "(4) When traversing any intersection of highways if during the last 100 feet of his approach to such intersection the driver does not have a clear and unobstructed view of such intersection and of any traffic upon all of the highways entering such intersection for a distance

of 100 feet along all such highways, except on a through highway or at a traffic-controlled intersection.''

The evidence pertinent to the issue presented on this appeal, viewed, as it must be, in the light most favorable to the verdict and judgment shows the following facts. Near Modesto Coffee Road running north and south is intersected at right angles by Sylvan Way which runs east and west. There are no stop signs at the intersection. On the day of the collision Lindstrom was driving south on Coffee Road toward the intersection and McReynolds was driving west on Sylvan Way, also toward the intersection. McReynolds testified that when he was about 200 yards east of the intersection and traveling at about 35 miles per hour he saw Lindstrom's car, which was then about a quarter of a mile north of Sylvan Way; that he saw it again when Lindstrom was about 500 feet away and he (McReynolds) was about 200 feet away and traveling at about 25 miles per hour; and that he saw it the third time when Lindstrom was but 50 feet away from the intersection and was traveling from 60 to 70 miles per hour; that he (McReynolds) had reduced his speed to about 15 miles per hour and on seeing Lindstrom's near approach put on his brakes, but that the cars collided; and that he was then traveling no more than 1 or 2 miles per hour and Lindstrom's speed was still 60 to 70 miles an hour. The Lindstrom car turned over several times and came to rest 155 feet from the point of impact. McReynolds also testified that while there were trees growing on the northeast corner of the intersection one traveling south on Coffee Road northward of Sylvan Way could see traffic on Sylvan Way through the trees.

K. W. Olinger, a highway patrolman, testified that one traveling south on Coffee Road, as Lindstrom was, does not have a clear view of the intersection for the last 100 feet; and Eugene Meyer, another highway patrolman, said that Lindstrom could not have seen McReynolds' car on account of the trees on the corner and that the intersection was ''blind'' for both roads. He did say, however, that one traveling south on Coffee Road, as Lindstrom was, could see between the tree trunks, but that he would not have an unobstructed view.

A Mr. Cruze, who was traveling south on Coffee Road, and intended to turn into Sylvan Way, testified that Lindstrom, traveling from 40 to 45 miles an hour, passed him and that he (Cruze) was 300 to 400 feet away when the collision occurred, at which time he estimated Lindstrom to be traveling at about 50 miles per hour. He said that he saw Mc-

Reynolds' car on Sylvan Way and watched it because he was going to turn into that road; that he thought Lindstrom would get through the intersection ahead of McReynolds; that one traveling south on Coffee Road, as Lindstrom was, could see Sylvan Way under the tree limbs, but would have to watch very carefully if going fast. A Mr. High, a farmer who resided in the neighborhood and was 250 yards away when he heard the crash, stated that, by watching, Lindstrom could have seen traffic for 300 yards back of the intersection, but that "your view through the trees there is sort of a dot and dash proposition"; that there were trees growing along the north side of Sylvan Way and that to see the road under the trees you would have to lean down, otherwise you would have broken glimpses of the highway and of traffic approaching on Sylvan Way through and between the trees. Lindstrom himself testified that on the day of the accident he left Riverbank for his home, but his last recollection thereafter was when he was crossing a canal bridge a mile from the intersection with Sylvan Way; and he could tell nothing at all about the facts preceding the accident; that his mind was blank as to what occurred after he crossed the canal bridge a mile away from the intersection.

In view of the foregoing facts we think that the giving of the instruction to which appellant objects was proper. This court in *Hamm* v. *San Joaquin etc. Canal Co.*, 44 Cal.App.2d 47 [111 P.2d 940] (hearing in Supreme Court denied), considered comparable facts and the giving of the identical instruction complained of herein, saying:

"It is true that he testified his view of Mr. Yoest's automobile was never obstructed. But other witnesses testified that his view of an automobile approaching on Cornelia Avenue would be effectively obstructed. That issue presented a question of fact for the determination of the jury. We are bound by the implied finding of the jury in that regard."

Again, in *Mize* v. *Duffy*, 106 Cal.App. 15, the court said at page 16 [288 P. 798]:

"There was a clear conflict in the evidence as to the rate of speed at which appellant was traveling and as to whether the intersection was an 'obstructed' or 'blind' corner. It was the province of the jury to resolve these conflicts."

In *Formosa* v. *Yellow Cab Co.*, 31 Cal.App.2d 77, the court said at page 87 [87 P.2d 716]:

"It became a question of fact for the jury to determine whether or not this particular intersection was an obstructed

intersection, and the finding of the jury upon this question would determine the speed at which vehicles approaching both from the north and from the south should travel. It was therefore proper for the trial court to instruct the jury as to the relative speed limits in approaching an intersection that was obstructed and also approaching the same intersection where the view was not obstructed."

While it may be true that there was evidence tending to show that the intersection was not a blind one, such evidence created only a conflict which was for the jury to resolve and we, therefore, conclude that there was no error in giving the instruction of which complaint is made.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.